Z. A. FERGUSON ET AL. *v.* BOARD OF SUPERVISORS OF MONROE COUNTY.

1. LOCAL OPTION ELECTION. *Order. Appeal. Code* 1892, ¿ 79; *Ib., ch.* 37.

While chapter 37, code 1892, entitled "Dram-shops," does not expressly provide for an appeal from a decision of the board of supervisors ordering an election, under ¿ 1610, code 1892, to determine as to the sale of intoxicating liquors in the county, said chapter must be considered along with the entire code, of which it is a part; and, under ¿ 79 thereof, an appeal to the circuit court from such decision may be taken by any qualified elector and tax-payer.

2. SAME. *Petition. Qualified electors. Registration.*

In determining whether a petition for a local option election is signed by the requisite one-third of the qualified electors in the county, the registration book is not conclusive or even *prima facie* evidence that the persons registered are qualified voters, registration being but one of several essential prerequisites to voting.

3. SAME. *Sufficiency of petition. Duty of supervisors.*

In order to ascertain whether such petition is signed by one-third of the qualified electors of the county, the board of supervisors should take the registration book merely as showing the possible qualified voters. They should reject from the petition the names of those who are not registered, and who, if registered, have not the other qualifications for suffrage prescribed by ¿ 241, const. 1890.

4. SAME.   *Petitioners.   Duplicate signatures, etc.*

> The names of signers of the petition who have died, should be disregarded, and names appearing more than once should be counted but once.

5. SAME.   *Signatures to petition.   Code 1892, §§ 1610, 1520.*

> The board of supervisors should reject every name on such petition not signed in the handwriting of the petitioner himself or by his proper mark.   Code 1892, §§ 1610, 1520.

FROM the circuit court of Monroe county.

HON. NEWNAN CAYCE, Judge.

On August 7, 1893, a petition was presented to the board of supervisors of Monroe county for an election under § 1610, code 1892, to determine whether intoxicating liquors should be sold in said county. Appellant, Z. A. Ferguson, and others, qualified electors and tax-payers in said county, appeared before the board and protested, in writing, against the ordering of the election, on the ground that the petition was not signed by the requisite one-third of the qualified electors of the county. The objectors offered to prove that a great many names on the petition were not signed by the parties purporting to have signed the same, and that some of the signers were dead; that still others were not qualified electors, because they had not, before February 1, 1893, paid the taxes due by them for the two preceding years. The board of supervisors refused to go into an investigation of these several matters of objection, and held that it could not go outside of the registration books in determining the number of qualified electors in the county. The board also refused to disregard names not signed by the petitioners themselves, but signed by their authority. The objectors offered evidence to show that several hundred names appearing on the petition did not appear on the registration list, and that many names appeared upon the petition more than once. The board, although declining to hear evidence as to this, announced that it would for itself investigate the matter, and make comparison of the petition with the registration lists,

and also determine for itself whether there were names repeated.

The protestants further filed a written petition of about twenty persons, who had signed the petition, asking that their names be taken therefrom and not counted. The record does not show that any action was taken by the board in this regard. The facts offered to be shown by the objectors, if established, would have reduced the number of qualified electors on the petition below the requisite two-thirds. The board ordered the election, and to this decision the objectors excepted, tendered a bill of exceptions, which was signed by the president of the board in open session, and prosecuted this appeal to the next succeeding term of the circuit court.

The board of supervisors moved to dismiss the appeal, on the ground that chapter 37, code 1892, did not provide for any appeal from a decision of the board ordering an election. This motion was overruled, and the court, after hearing the cause on the bill of exceptions, rendered judgment affirming the decision of the board of supervisors, and from this judgment the protestants appeal.

*Houston & Reynolds,* for appellants.

Section 1610, code 1892, defines the boundary, scope and limit of the power of the board as to ordering the election, and any departure from its requirements renders its action illegal. That the petition contained one-third of the qualified electors was affirmative matter, to be shown as a fact. *Hawkins* v. *Carroll County,* 50 Miss., 735; *Tally* v. *Grider,* 66 Ala., 119; *Gould* v. *Sterling,* 23 N. Y., 456.

The words "qualified electors," within the meaning of the statute, must mean those possessing the qualifications prescribed by § 241, const. 1890. From this section we see that registration is but one of many essential qualifications for voting. Surely it cannot be that one is a qualified elector for the purpose of securing or calling an election, and yet, at the

very election which he has been instrumental in calling, he is not qualified to vote.

It was the duty of the board to hear the evidence offered to show that a large number of parties on the petition had not paid their taxes. The registration books are not conclusive or even *prima facie* evidence of the right to vote. *Bew* v. *State, ante,* p. 1.

Names appearing on the petition more than once should not have been counted. It was error to refuse to disregard names not signed by the petitioners themselves or by their proper marks.

An appeal from a decision of the board ordering an election lies under § 79, code 1892, and the court rightly refused to dismiss the appeal. The objectors were qualified electors and tax-payers of the county, and, as such, were " aggrieved persons," and had a right of appeal. *McCreary* v. *Rhodes,* 63 Miss., 308; *Wilson* v. *Wallace,* 64 *Ib.,* 13; *Lemon* v. *Peyton, Ib.,* 161. The order for the election is clearly such a decision as can be appealed from under § 79, code 1892. *Deberry* v. *Holly Springs,* 35 Miss., 385.

The chapter on dram-shops must be considered with the rest of the code, both in determining who are qualified electors and whether a right of appeal lies. We submit that an appeal is the only remedy. It was held that the right of prohibition directed to the commissioners of the election could not call into question the propriety of the rulings of the board of supervisors or the hearing of a petition. *Lemon* v. *Peyton, supra.* As a matter of public policy, there must be some method of having the supreme court pass upon the legality of an order like this.


*W. B. Walker,* for appellee.

The board of supervisors was bound by the registration books. The law presumes that the registrar, in placing names on that record, has performed his duty, and the board must act on that presumption. The managers of the elec-

tion at the polls are the only judges of the eligibility of those whose names appear on the registration books. The chapter on dram-shops provides for commissioners of election, with power to revise the registration rolls. It cannot be contended that the board of supervisors can also assume that duty.

The circuit court should have dismissed the appeal. None is granted by chapter 37 from a decision ordering an election. It being a purely statutory proceeding, and the statute not providing for an appeal, none can be taken. *Parker* v. *Willis*, 27 Miss., 766; *Bridges* v. *Supervisors*, 57 *Ib.*, 252; 1 Am. & Eng. Enc. L., 616; Powell on App. Pro., 104. Section 79, code 1892, does not apply, for, if an appeal be allowable under that section, appellants have no rights which have been injured by the decision, and hence cannot prosecute the appeal. Powell on App. Pro., 47, 131; 11 Am. & Eng. Enc. L., 624; 26 Miss., 166.

*Gilleylen & Leftwich*, on the same side.

An appeal is not a matter of right. *Pickett* v. *Pickett*, 1 How., 267; *Carmichael* v. *Trustee*, 3 *Ib.*, 84; *Hardaway* v. *Biles*, 1 Smed. & M., 657; *Parker* v. *Willis*, 27 Miss., 766; *Bridges* v. *Board of Supervisors*, 57 *Ib.*, 252.

In calling the election, the board discharges the mere ministerial function of counting the names of the petitioners and comparing the total with the registration list. Their action has no semblance of a judicial act, from which an appeal might lie under § 79, code 1892. Appellants were not parties to the record. The dram-shop chapter makes no provision for counter petitions in cases of this sort. Appellants are without standing in any court. See *Miller* v. *Keith*, 26 Miss., 166; 1 Am. & Eng. Enc. of L., 619.

It does not appear that appellants were aggrieved by the decision. The courts are not ordained to settle mere political grievances, but matters of personal and constitutional right. The board rightly refused to go behind the registration books

to see if those registered had paid their taxes. Even if a signer were in default when he signed, he still had the right to pay his taxes before the election, and a ruling that would render the construction of the law different at different periods of the year would be anomalous.

The bill of exceptions shows that the board rejected names signed more than once, and names of persons who had died. The presumption is that the board performed its duty. It must be presumed that, as to all matters *in pais*, it acted correctly, unless the contrary appears. Surely, it cannot be contended that it was the duty of the board to examine and take testimony as to every name on the registration list, and do the same as to every petitioner. It is not true that the appellants are without remedy save by appeal. If the order for the election be invalid, and an election be held, it can be ignored by any applicant for license.

*Houston & Sykes*, on the same side.

Only the board of registrars can qualify an elector. If one be denied registration, he can appeal to the commissioners. Code 1892, §§ 3623–3627.

The board of supervisors can neither add to nor take from the list of registered voters. They cannot revise the list. The question of being qualified to vote can be made only (1) by appeal direct to the commissioners, (2) by the board of registrars revising and purging the registration books, and (3) by challenge at the polls. The duty of the board was merely to decide whether a third of the registered voters were on the petition. No provision is made for a counter petition or for an appeal from its decision. The jurisdiction of the board is limited, and its powers strictly construed. We submit that the judgment of the court below is correct.

CAMPBELL, C. J., delivered the opinion of the court.

The circuit court rightly refused to dismiss the appeal. Code 1892, § 79; *Deberry* v. *Holly Springs*, 35 Miss., 385;

*Wilson* v. *Wallace*, 64 *Ib.*, 13.    The argument that, because § 1581 of the code gives an appeal from a grant of license, the right of appeal on a totally different question must be assumed to be denied, on the principle *expressio unius exclusio alterius,* is not sound.    An appeal from a grant of license is given, and one from refusal of license is not given, because granting or refusing license is discretionary, and no appeal could properly be had from an exercise of discretion, except in the interest of temperance and to give the opponents of license an advantage.    Allowing an appeal from a grant of license, and silence as to one in case of refusal, makes the maxim quoted applicable and decisive that no appeal lies in case of refusal of license; but it has no application to the question of the right of appeal from a decision of the board of supervisors dealing with § 1610.

The argument that no appeal lies because none is given by chapter 37 of the code, and that it is an independent chapter, and to be considered alone and without reference to other provisions, must be rejected, for, if it were accepted as true in its full import, we would have no means of determining who are qualified electors of any county or what are legal voters as spoken of in the various sections regulating elections to determine as to the sale of liquors, and petitions for license to sell by retail or wholesale, for the chapter itself contains no definition of these terms.    We are therefore compelled, by the necessity and propriety of the case, to adopt the view heretofore announced, and now re-affirmed, that this chapter 37 of the code is to be viewed as part of a whole, and as having reference to the constitution and laws of which it is but a part; that it was framed and adopted with this view, and in using the expression " qualified electors," it had reference to those who are such under the constitution and laws, and that " legal votes " are those cast according to law by those who could cast legal votes at an election contemplated by the constitution and laws in pursuance of it.    Therefore, in considering chapter 37, we are

not restricted to its provisions, except wherein any of them may be in their nature exclusive of all others and independent of them.

It seems clear to us that any qualified elector and taxpayer has the right to appeal from any decision of the board of supervisors ordering an election under § 1610 of the code, for that is the only matter in the business in which the board is to make a " decision." Ordering the election and appointing commissioners to hold it terminates the duty of the board as to the election. It has no more to do with it, except to receive the report of the commissioners of the result of the election, and have it recorded on its minutes. It decides only as to ordering the election, and this decision is the thing to be appealed from, if any thing can be, connected with the whole proceeding. The statute makes no provision for contesting the election before any constituted tribunal. The matter of dealing with the returns of the election from the precincts and declaring the result is committed wholly to the commissioners of election provided for, who are to declare the result, and report it to the board of supervisors, to be spread on its minutes as a permanent memorial of the result. No duty is imposed on the board as to such return. No power is conferred on it, but it is passively to receive the return and have it spread on its minutes. The only thing committed to it to make a decision on is the ordering the election. Declaring the result is committed to the commissioners, who are to canvass the returns and ascertain and determine the result. What is the allowable scope of their investigations in dealing with the matter committed to them, is a disputed and unsettled question not here involved; but that the board of supervisors has no decision to make as to the returns is very clear.

If no appeal lies from the decision of the board of the only matter for it to decide, there is no appeal, and no means of invoking the judgment of a higher tribunal on any question involved in the proceeding, which may involve most impor-

tant results. It is as well for the cause of temperance and opposition to the sale of liquors as for those who favor the sale of liquors, to maintain the right of appeal, for it may happen that erroneous decisions may be made in ordering elections under circumstances favorable to the sale. It is quite conceivable that persons favoring the sale of liquor may seize a favorable condition of things as to the qualified electors of a county, and force an election with the favorable conditions. No harm can result from the right of appeal. Much may result from its denial. Were it doubtful whether the right exists, it would be proper to solve it in favor of the right, but we do not so regard it, and think it plainly given. It is unfortunate that the matter is not better regulated, and that provision was not made for delaying further proceedings in case of appeal, until a decision of the appeal; but the fact that embarrassment may result is not an argument against allowing an appeal plainly given. It is true that an appeal is not matter of right unless given. It is the creature of law, as argued; but no jealousy of the right of appeal should be indulged, and lead to a narrow construction of a law allowing appeal. The judicial determination of controversies is one of the chief functions of organized society, for which the judicial department is created, and an appeal ultimately to this court is the constituted mode of obtaining the authoritative decision of the state, whose voice we utter, and whose judgment we register, binding on all.

While it is admissible for the legislature to deny or fail to give the right of appeal where it is not secured by the constitution, it is so manifestly right that one aggrieved by the decision of any controversy by an inferior tribunal should be entitled to invoke the judgment of the commonwealth through its highest tribunal, as to make proper the rule of construction we have announced in favor of the right of appeal.

The circuit court erred in affirming the decision of the board of supervisors, which was clearly wrong in holding that it would regard the registration book of the county as

conclusive evidence of the qualified electors of the county. So far from this being true, the registration book is not even *prima facie* evidence of the number of qualified electors. It is evidence of nothing except of the list of persons registered, and who have complied with that requisite to the right to vote. It does not confer the right to vote. It is that without which one cannot be a qualified elector, an essential prerequisite, and yet not conferring the right. There cannot be any qualified elector not registered, but there may be thousands registered and not qualified electors. It may be determined from the registration book that the number of qualified electors does not exceed those shown by it. It may be seen by an inspection of it that certain persons are not qualified electors because not registered; but it cannot be determined from the registration book that there is a single qualified elector in the county. The right to register, and being registered, and the right to vote, are distinct and different things. One may be registered and not be entitled to vote. We examined and decided this question, at the present term, in *Bew* v. *The State, ante,* p. 1, and are satisfied with the view there announced and repeated now. There seems to have been great misconception on the subject, which led to bad legislation, some violative of the constitution and some not fully carrying out its spirit. In the case cited we held § 3612 of the code of 1892 unconstitutional in forbidding any person to be registered who has not paid all taxes. The section alluded to as not carrying out the spirit of the constitution is 3615, which denies the right to register within four months of an election, which unduly interferes with the freedom of registration at any time. There is nothing in the constitution to inhibit registration on the day of an election or at any time. One cannot vote within four months of his registration, but, registering and voting being distinct things, no reason exists why a man may not register, being qualified for that, at any time, and his right to vote will be determined when he offers to vote.

Registration books show the list of possible voters. The actual legal voters within that list can be determined only at the ballot-boxes, or, where it becomes a question for decision elsewhere, by inquiring who would be entitled to be received as qualified electors at the ballot-boxes. The constitution does not say there shall be no registration within four months of an election. Its language is: " SEC. 251. Electors shall not be registered within four months next before any election at which they may offer to vote." But under this there is no reason why registration may not go on without intermission, for, when one will offer to vote is in the future, and depends on himself. He may not vote at an election held within four months of his registration, but he may desire to register, so as to qualify himself to vote at any election which may be held one, two, three or four months after an election in November. It may be that a special election will be held a few weeks or months after the regular election, or there may be a contest similar to this about the sale of liquors, with reference to any of which he may desire to be qualified to vote. With a denial of the right to register for four months prior to, say, the seventh of November, when an election was held, it would be impossible for him to be registered and qualified to vote at any election held before the seventh March. The constitution, in section 251, manifests anxiety to avoid denial of the right to register so as to qualify for any election, by the provision securing the right to any who may attain majority or complete the required residence within the four months before an election. One who will become of the age of twenty-one years or complete the required residence on the day of the election, is entitled to be registered four months prior to the coming election, so as to avoid the rule that four months must elapse between being registered and voting. In view of this manifest purpose of the constitution to enable all having the requisite qualifications when an election is held to qualify by the essential of being registered, it would seem that facilities for registering

at any time should be furnished by law. These last obser-
vations are made as the complement of views announced by
us in the former decision mentioned, and in this, in order
fully to present our interpretation of the constitution on this
important subject, which has been so misunderstood.

It was the duty of the board of supervisors to ascertain
and determine that the petition contained the signatures of
one-third of the qualified electors of Monroe county, for it
is only on such petition that an election of the kind petitioned
for can be lawfully ordered. The authority is special, and
the result of the election, if against sale, is to have the extra-
ordinary effect of putting in operation a prohibitory and
highly penal law. There must be conformity to the law in
ordering the election provided for, in order to make the re-
sult effective. In order to ascertain if the petition was signed
by one-third of the qualified electors, it was necessary to ex-
amine the registration book, to see which of the petitioners
possessed the necessary qualification of being registered, and
to reject from the petition all names not registered. The
registration book, too, was to be taken as showing all who
are possible qualified electors in the county. Then inquiry
was admissible, and to be made, as to who of the petitioners,
being duly registered, were qualified electors, and any found
not to be should have been rejected from the petition.
Section 241 of the constitution prescribes the qualification
of electors, and the qualified electors meant by § 1610 of
the code are those declared such by the constitution. Any
petitioner not having the prescribed qualifications should
have been rejected. If, on investigation, it appeared that
one-third of the qualified electors of the county entitled to
vote at an election held in pursuance of the constitution and
laws had signed the petition, the election should have been
ordered; otherwise not.

The board rightly held that names signed more than once,
and names of dead men, would be disregarded, as far as was

proper—that is, reject names of the dead, and count those signed too often but once.

The board was in error in deciding that it would regard the names of persons not signed by them, but by their authority. That used to be the law, but it is not so now. Section 1610, code of 1892, requires the petition, in writing, of one-third of the qualified electors "signed by them," and § 1520 provides that "in all cases where the signature of any person is required by law, it shall always be the proper handwriting of such person, or, in case he be unable to write, his proper mark." There is no escape from this positive and plain requirement, and it must be duly observed. Its effect is to make necessary the proper handwriting of the petitioner, or his "proper mark," whatever that is, if he cannot write. No more is a signature required by law to be affixed by proxy. It must be signed by the hand of the petitioner himself. *Ita lex scripta est*, and for wise purposes, as we must suppose. Anyhow, it cannot be disregarded, whatever may be thought of its wisdom, and it renders worthless every name on the petition not put there by the hand of the petitioner.

*Judgment reversed, and, rendering the judgment which should have been rendered by the circuit court, the decision of the board of supervisors ordering an election is reversed and vacated, and the cause remanded to the circuit court, to be remanded to the board of supervisors.*