ELIHU J. GREENE ET AL. *v.* VILLAGE OF RIENZI ET AL.

1. DE FACTO OFFICERS. *Municipalities.*

　The acts of *de facto* municipal officers are valid when they would have been so had the officers been *de jure.*

2. MUNICIPAL BONDS. *Issuance. Elections. Qualification of voters. Code* 1892, § 3016.

　The word "electors," as used in Code 1892, § 3016, regulating the issuance of municipal bonds, means "those who would be entitled to vote at any election held in pursuance of the constitution and laws of the state."

3. SAME. *Bona fide holders.*

　*Bona fide* holders of municipal bonds, who relied upon the face of the record, will be protected against informalities and irregularities in the proceedings authorizing the issuance of the bonds, and from mistakes and lack of wisdom on the part of the authorities.

FROM the chancery court of Alcorn county.

HON. A. J. McINTYRE, Special Chancellor.

Greene and others, the appellants, were complainants in the court below; the village of Rienzi and others, officers of the municipality, the appellees, were defendants there. From a decree sustaining the demurrer of defendants to the bill the complainants appealed to the supreme court. The facts are stated in the opinion of the court.

*Candler & Candler,* for appellants.

The constitution of Mississippi, sec. 241, defines a qualified voter; and sec. 243 requires the legislature to provide for his registration; and sec. 245 says electors in municipal elections shall possess all the qualifications prescribed for state and county voters, and such additional qualifications as may be provided by law.

Code 1892, § 3028, says:

"Every person who is a qualified elector of the county, who has resided within the corporate limits of the village for one year before he offers to register, and who is not in default for taxes due the municipality for the two preceding years, shall be entitled to register and vote at all municipal elections."

Section 249 of the constitution of Mississippi says:

"No one shall be allowed to vote for members of the legislature or other officers who shall not have been duly registered under the constitution and laws of the state by an officer legally authorized to register the voters, and registration under the constitution and laws of the state by the proper officer is hereby declared to be an essential and necessary qualification to vote at any and all elections."

*W. J. Lamb,* for appellees.

The bill shows that the board of mayor and aldermen were performing all the functions and duties that come within their scope as such officers; and whether they were legally elected or

not, they were *de facto* officers, and as such officers their acts and doings were legal and binding.

We agree that a failure to comply with the sections of the constitution and the code touching registration would render an election void if those sections apply. Those sections of the constitution and code apply only to such elections as were intended by the framers of the constitution and the legislature; such an election as the one mentioned in this cause was never contemplated by the framers of the constitution or the legislature, and only such elections were contemplated as are usually incident to the election of officers, or such matters as pertain directly to the municipal government. *Bew* v. *State,* 71 Miss., 1 (s.c., 13 South. Rep., 868).

It has been repeatedly held by the different courts of last resort that registration and election laws apply only to elections that the framers of the constitution and the legislature contemplated when said laws were passed, and not to elections that were contemplated by the laws of the constitution. As was said in the Bew case above, the election to determine whether this village would issue bonds or not "is a special device," and the same is applicable to this class of elections; and unless the appellants can show that, because of a failure to have a registration, fraud was perpetrated and thereby caused the election to be carried in favor of the issuance of bonds, they are not entitled to relief. 10 Am. & Eng. Ency. Law (2d ed.), 618.

TRULY, J., delivered the opinion of the court.

The case made by the bill and exhibits on the only points we deem it necessary to discuss is this: The village of Rienzi is governed by the code chapter on "Municipalities." The *de facto* board of mayor and aldermen of the village decided to issue municipal bonds to the amount of $1,500 for the purpose of purchasing land and erecting a schoolhouse. A petition signed by a sufficient number of taxpayers having been presented, pro-

testing against the issuance, an election was ordered, submitting the question to a vote. The election commissioners reported that thirteen votes were cast in favor of the issue and eight against it. Thereupon the board advertised for proposals to purchase the bonds; but before the bonds were actually negotiated, issued, and delivered, injunction was issued on the bill of complaint herein, and the sale and delivery of the bonds restrained. The bill states two grounds on which appellants seek to prevent the issuance of the bonds: (1) That the board of mayor and aldermen of the village of Rienzi are not a legal board, because they were never elected according to law, and hence all their actions in the premises were illegal and void; (2) that at the election at which the question of the issuance of the bonds was submitted "none of those voting were registered voters of said village, and some of those who voted were not qualified voters of the county of Alcorn, state of Mississippi, being delinquent for taxes due state and county, and some had not resided in said village for twelve months." The bill further charges that prior to said election no registration was ever had of the qualified voters of said village. A demurrer to the bill was sustained, the injunction dissolved, and the bill dismissed; and upon appeal this action of the court is assigned as error.

As to the first ground relied on by appellants, we content ourselves by reaffirming the established doctrine that the law attaches validity to the acts of *de facto* officers. *Powers* v. *State,* 83 Miss., 702 (36 South. Rep., 6). It is admitted that the board of mayor and aldermen are actually clothed with the insignia of office and exercising its powers and functions. Their official acts are therefore valid and binding, however questionable their legal title to the office may be. *Norton* v. *Shelby County,* 118 U. S., 425 (6 Sup. Ct., 1121; 30 L. ed., 178).

The second ground on which the bill of complaint seeks to prevent the issuance of the bonds is that there was no duly qualified electorate in the village of Rienzi, and that none of those who

participated in the bond election were registered voters.    To
this it is replied by appellees that no registration is necessary for
such election; that it is, in truth, not an election at all, in the
sense in which that term is used in the constitutional and statu-
tory provisions dealing with registration and elections generally,
but is merely a special device for ascertaining the will of the
taxpayers with regard to a purely local question.    An isolated
expression in the opinion of the court in *Bcw* v. *State,* 71 Miss.,
1 (13 South. Rep., 868), is relied on as authority.    We think
the contention unsound.    The very case relied on by appellees is
conclusive against their position.    In the Bew case, although
the election was merely a legislatively established special device
for ascertaining the will of the people on a question submitted
to their decision, the court held that previous registration was
essential to the exercise of the right of suffrage at such election.
Says the court: "One is not qualified to vote if not duly regis-
tered; but being duly registered does not entitle him to vote.    It
is an essential prerequisite, but does not qualify to vote.    It is
that without which all other qualifications to be an elector go for
nothing; but it is not sufficient to entitle one to vote.    Registra-
tion is not made by the constitution or law even *prima facie*
evidence of the right to vote.    That is to be passed on by the
officers holding the election, who are made "judges of the qualifi-
cations of electors."    They would reject the ballot of one who
had not been registered, and should not receive the ballot merely
because the person offering it had been registered.    They must
judge of the qualifications of electors offering to vote, "of which
one necessary thing is registration."    There cannot be any qual-
ified elector not registered.    "It is that without which one can-
not be a qualified elector—an essential prerequisite—and yet
not conferring the right."    *Ferguson* v. *Monroe County,* 71
Miss., 533 (14 South. Rep., 83).    Code 1892, § § 3028, 3029,
prescribing the conditions precedent to the lawful exercise of the
right of suffrage by electors of a municipality, provides: First,

the person must be a qualified elector of the county, and this carries with it by necessary legal implication that he must be not only registered in the county as required by law, but that he must also possess the other necessary qualifications authorizing any person to vote; second, he must have resided within the corporate limits for one year next before he offers to register; third, he must not be in default for taxes due the municipality for the two preceding years. If he possess all these qualifications, then he shall be entitled to register and vote at municipal elections; but in municipal elections, as those dealt with by the constitution and the general laws, registration is a prerequisite to the exercise of the right of suffrage. This being so, and the bill of complaint expressly charging, and the averment being admitted by demurrer, that there were no registered voters in the village of Rienzi, it follows necessarily and inevitably that there was no one qualified to vote at the election.

The contention that, because this is simply the submission of the question of the issuance of municipal bonds to be voted on, it is not, properly speaking, an election within the purview of the law, but merely "a special device for determining" the will of the people interested with reference thereto, and that therefore it is not necessary for those participating therein to possess the prescribed constitutional and statutory qualifications of electors, is unsound. It is true, as before stated, that the general law applicable to elections does not include legislative plans specially devised for ascertaining the will of the people; it is also true that it is within the province of the legislature to devise any other of many different schemes by which the issuance of municipal bonds or the determination of other local questions might be had, and that in some instances bonds may lawfully be issued without reference to the method here under review. But this does not change the rule that when the assent of a majority of the participating electors is required, and that assent is to be signified by votes cast at an election held for that specific purpose, as pro-

vided by Code 1892, § 3016, the word "elector," as employed in that section, must be given its generally accepted meaning; and the term as judicially defined in the Bew case means "those who would be entitled to vote at any election held in pursuance of the constitution and laws of the state." The reasoning of that case is controlling in this. "The code is to be considered as a whole and with reference to the constitution." So considering it, the conclusion is inescapable that when sec. 3016 requires the affirmative authorization of "a majority of the electors" to be evidenced by their "voting in an election to be ordered for that purpose," it means those who would be qualified as "electors" in an election contemplated by the constitution and laws. To the same effect, see *Clarksdale* v. *Broaddus,* 77 Miss., 670 (28 South. Rep., 954).

It is no answer to this to say that the legislature might have authorized the majority of the taxpayers to determine the question or that the issuance of bonds under any and all circumstances might have been submitted solely to the discretion of the board of mayor and aldermen of the municipality. Granting this, the fact remains that the legislature did not so decide, but required, as a condition precedent to the lawful issuance of municipal bonds under the case made by this record, the authorization by "a majority of the electors voting in an election to be ordered for that purpose." Code 1892, § 3016. The argument based on the familiar and immutably-fixed doctrine that *bona fide* holders of bonds, relying upon the face of the record, will be protected against any informalities or irregularities in the proceedings authorizing the issuance of the bonds, or from mistakes or lack of wisdom on the part of the authorities issuing and negotiating the bonds, is, of course, perfectly sound. *Lexington* v. *Bank,* 75 Miss., 1 (22 South. Rep., 291). But it is foreign to this case, for the reason that the bonds have never been issued or negotiated, and the rights of third persons are in no wise involved. It being admitted, therefore, by the demurrer, that

there was no lawful electorate in the village of Rienzi, and that, consequently, no legal voters participated in the election, it follows that the board of mayor and aldermen of that municipality were not legally authorized to issue the bonds in question.

*The decree is reversed, the demurrer overruled, the injunction reinstated, and the cause remanded for answer within thirty days after filing of mandate in the court below.*