## SAMUEL MORRIL *vs.* MATTHIAS HAINES.

A representative in the state legislature is a " state officer."
If, at a balloting for such representative, the check list be not used, the person, who puts in more than one vote at one and the same balloting, incurs no penalty.

THIS was debt for the penalty of $30, for that the defendant, on the 9th of March, A. D. 1819, at Epsom, in this county, put in more than one vote at the same balloting for a person to represent that town in the general court the then current year.

The defendant pleaded *nil debet,* and at the trial here, September term, 1819, though the plaintiff admitted that the votes were not delivered to the moderator in person, and the check list not used, yet evidence, that the defendant voted as alleged in the declaration, was permitted to go to the jury.

A verdict was found for the plaintiff, subject to the opinion of the court on the admissibility of the above testimony.

There was, also, a motion to set aside the verdict on account of a supposed omission by the clerk to swear one of the jurors. But the decision on the other point renders the report of that one unnecessary.

*Lawrence* and *J. Smith,* counsel for the plaintiff.

*Steele* and *Mason,* for the defendant.

WOODBURY, J.* The questions, which this case presents, may be considered under two heads. 1st. Whether a check list is required to be used in the election of representatives to our state legislature. 2d. If it be, whether a person, when the check list is not used, is liable to a penalty, if he give

---

* Green, J., having been of counsel, did not sit.

in more than one vote for such representative at one and the same ballotting.

This action is founded on the 1st section of our statute of June 24th, 1814.(1) That section was substituted for the 1st section of the statute of June 14th, 1799.(2)

(1) 1 N. H. Laws 253.
(2) 1 N. H. Laws 249.

In both of those sections, " representatives to the general court" are specified as " officers ;" for whom, if more than one vote at one and the same ballotting is given, a penalty accrues.*

But it is contended, on the part of the defendant, that, as the act of June 23d, 1813,(3) provides for the choice of all " state and county officers" by a check list, and by the delivery of the ballots to the moderator in person, a representative to the general court, being a state officer, should be chosen in this manner. This argument is well founded, if a representative be, in fact, a " state officer. Two methods exist, by which it may be ascertained, whether the makers of the statute of June 23d, 1813, intended to include him under the general expression of " state officers." One is by a comparison of the different statutes, in which the words " state officers" are employed ; and another is, by an examination of the character and duties of " state officers."

(3) 1 N. H. Laws 252.

In the two statutes before mentioned, which impose a penalty, representatives to the general court are specifically enumerated ; and it is, therefore, contended by the plaintiff, that they are not considered as belonging to the general classes of " state" or " town" officers, but as being officers *sui generis,* who partake of some qualities different, and of some common to both of those classes. But these statutes, it is to be remembered, are penal, and consequently in some places descend to such minuteness as to particularize officers, which were before manifestly included in general expressions.

---

* Indeed, as early as A. D. 1643, acts of this kind were made penal among some of our ancestors. " It is ordered by this court and the authority thereof, that for " the yearly choosing of assistants, the freemen shall use Indian corn and beans ; " the Indian corn to manifest election, the beans contrary ; and if any freeman " shall put in more than one Indian corn or bean for the choice or refusal of any " public officer, he shall forfeit for every such offence £10." *Colonial Chart.* 105.

Morril
vs.
Haines.

Thus, in the first statute, a representative is embraced under the general expressions, " town" or " state officers"; else no penalty is imposed on the receipt of votes for him by proxy. So the preamble, as it relates only to " town" and " state officers," embraces a representative under the same general expressions. The whole statute too bears marks of loose and untechnical phraseology ; as an instance of which no penalty is imposed on moderators for the improper receipt of two votes at one ballotting for representatives to Congress, nor on voters for putting in two votes at one ballotting for electors of president.

The second statute, having been passed after doubts arose in the legislature, whether a representative must not be chosen by a check list, deserves still less weight on account of its special enumeration of representatives. But even this statute, in the 10th section,(1) appears to refer to the general expressions of " town and state officers" in the 9th section, as embracing all officers within the purview of the statute.

(1) 1 N. H. Laws 155.

On the other hand, statutes exist which, in all their provisions, distinctly negative every presumption, that " repre-" sentatives to the general court" were considered by the legislature as either officers *sui generis*, or town officers, in contradistinction to state officers. Thus, in the " act, di-" recting, that state and county officers shall be elected on " the same day throughout this state,"(2) representatives to the general court are distinctly embraced in the expression, " state officers," and are also excluded from the class of " town officers ;" because they are not allowed, except when chosen by two or more towns, to be elected like town officers on any other day than the 2d Tuesday of March. To the same effect are the statutes and constitution, when describing the character and duties of representatives.

(2) 1 N. H. Laws 48.

Thus, in the constitution, page 9, they are, like other " state officers," required to be chosen by ballot ; whereas our most important " town officers" were not so chosen till A. D. 1804. 1 *N. H. Laws* 249.

The same qualifications are required in voters for representatives as for senators(1); and nobody can doubt, that senators, in the statute of June, A. D. 1813, respecting a check list, are embraced under the general expression, "state officers." Their oath of office is, in form, that of senators and other state officers; is administered by the same tribunal; is unlike the oath to town officers,(2) and cannot like that oath be administered by the town clerk.(3)

Again, representatives are paid by the "state"; their acts bind the "state"; in the constitution they form an important part of what is there denominated the "legislature of the "state,"(4) and collectively they are styled "the grand inquest of the state."(5)

It would be derogatory to degrade them, when invested with such extensive powers and such high responsibility, into the petty officers of a mere corporation. For such are all "town officers," moving only in their narrow sphere, shielded only by corporate immunities, and clothed with none but corporate authority.

Representatives, being chosen by towns, is a fact which cannot alter their official rank; because that rank arises from their destination and power. Thus senators and counsellors, though chosen by districts and counties, are still beyond question, "state officers." To any person, also, experienced in our elections, the importance of a check list will appear as great in the choice of representatives as in that of any state officer whatever.

From all these considerations, we entertain no doubt, that a representative in the general court is a "state officer," and consequently, that the act of June 23d, 1813, requires he should be chosen by the check list.

A second question then arises, whether, in the present case, the neglect to use a check list and to deliver the votes to the moderator in person, was such a departure from the statute as to avoid the whole ballotting, and exonerate the defendant from a penalty. If the statute had imposed a fine for a neglect to use the check list, it might be inferred that

32

*Margin notes:*

Morril
*vs.*
Haines.

(1) 1 N. H. Laws 8.

(2) 1 N. H. Laws 240.
(3) 1 N. H. Laws 242.

(4) 1 N. H. Laws 8.
(5) 1 N. H. Laws 9.

Morril
*vs.*
Haines.

(1) Johnson
vs. Wilson,
Hills. Oct.
1820.

the ballotting would be valid, though a fine would be incurred by the selectmen.(1)

Thus a fine is imposed for a neglect to post up in due season a check list for public inspection ; and if such neglect should happen, but still a check list be used at the election, it is probable the ballotting might be valid, and only the fine incurred. For in that event the nature of the neglect would not directly open an avenue to those frauds and irregularities, during the ballotting, which the statute was intended to prevent. But in respect to the use of a check list at the ballotting, the statute is peremptory in requiring it ; and, as no fine for neglect to use it is imposed, the consequences of such neglect must be fixed by the nature and tendency of it. If, at an election of representatives, the check list be flung aside, and votes are indiscriminately crowded into the ballot box without an inspection by the moderator, it must be obvious to all observing citizens, that every evil, which the statute was designed to remedy, is likely to happen, and that two prominent provisions of it will be trampled under foot. Votes so given and received, are neither given nor received in conformity to the essential requisitions of the statute ; and, such requisitions being violated, the votes must be void. They would be no more void, if given *viva voce*, rather than by ballot. If such a neglect of the statute will not render the whole proceedings void, what neglect will have that operation ? The whole ballotting, therefore, in this manner is vitiated. No representative can thus be duly elected. The man, who, on such an occasion, gives in more than one vote, does no injury ; neither defeats nor promotes the legal choice of any person ; and hence he incurs no penalty. He does not give in more than one vote at one and the same legal ballotting for representative.

This action, it is to be remembered, is founded on a penal statute ; and whatever may have been the moral turpitude of the defendant, he has inflicted no civil injury, if the whole ballotting was technically illegal.

This opinion will not affect the seats of existing members in the legislature, if any of them were not chosen in con-

formity to the statute. For the legislature, as to their own body and proceedings, are judges of their own elections, and have admitted the present occupants to their seats. Indeed, we see no sound objection to holding, that their decision on this point may bind the public as well as themselves in respect to their immunities and authority as members; but there is no pretence in law, that such a decision can affect the legal rights of private citizens, when investigated in judicial tribunals, and when those rights accrued some months previous to such decision. 1 *N. H. Rep. Merrill vs. Sherburne.*—15 *Mass. Rep.* 447.—4 *ditto* 32, 35, *Coffin vs. Coffin.*

The verdict must, therefore, be set aside, and the plaintiff become nonsuit.