PEOPLE, EX REL. QUEREAU v. HAMROCK.

No. 10,701.

Decided January 7, 1924.

Quo warranto proceeding involving the office of civil service commissioner. Judgment for defendant.

*Affirmed.*

1.    CIVIL SERVICE—*Commissioners—Beginning of Term of Office.* The civil service amendment is self-executing, the office of civil service commissioners, created by the amendment, existed from and after the time the amendment went into effect, and the term of office of the commissioners began when the office began.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. RUSSELL W. FLEMING, Attorney General, Mr. RILEY R. CLOUD, Assistant, Mr. CHARLES ROACH, Deputy, for plaintiff in error.

Mr. JOHN R. WOLFF, Mr. DONALD C. MCCREERY, for defendant in error.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS was an action in quo warranto, begun by the people upon the relation of Elizabeth Quereau against P. J. Hamrock to oust him from the office of state civil service commissioner, and for an adjudication that the relator was entitled to the office. The judgment was for the defendant. The cause comes here for review.

The principal question to be determined is: When did the term of the civil service commissioners begin under the provisions of the constitutional amendment?

The amendment was voted upon at the November, 1918, election and declared adopted by proclamation of Governor Gunter, December 31, 1918. It provides for a state civil service commission "to consist of three members who shall be appointed for overlapping terms by the Governor alone. * * * The first three commissioners appointed hereunder shall hold for two, four and six years respectively." L. 1919, Ch. 102, p. 341.

January 9, 1919, Governor Gunter appointed Roberts as a commissioner for the four year term. January 12, 1922, Roberts resigned and Governor Shoup appointed Trounstine to fill the vacancy in "said term expiring January 9, 1923." December 31, 1922, Trounstine resigned, and January 2, 1923, Governor Shoup appointed defendant in error Hamrock "for the term expiring December 31, 1928." January 9, 1923, Governor Sweet, who on that day succeeded Governor Shoup in office, appointed relator as a

member of said commission "for the term of six years commencing on the 9th day of January, A. D. 1923."

Relator contends that the terms of the commissioners began to run only when the appointments were first made and hence the Roberts-Trounstine term expired January 9, 1923, and her appointment became effective that day, Governor Shoup having no power to appoint an officer whose term began at or later than the date of the expiration of the Governor's. Defendant in error contends that the terms of the commissioners began to run when the act became effective through the Governor's proclamation and hence the Roberts-Trounstine term expired December 31, 1922, and Hamrock's appointment was valid for a full term of six years less the two days already elapsed.

In *People v. Bradley,* 66 Colo. 186, 179 Pac. 871, this court held that the civil service amendment is self-executing, even to the extent that the office of a civil service commissioner existed from and after the amendment went into effect, with or without any legislation on the subject. The office existed, therefore, on and after December 31, 1918, and the Governor could, according to our decision in the Bradley Case, appoint members of the commission at any time on or after December 31, 1918, to begin serving at once. The office existed without legislation, and since it did so because the amendment is self-executing it follows that the office existed without appointment. The Governor had no power, neither did the legislature, to defer the existence of the office by failure to act. Had the Governor failed to make any appointment, the office would still be deemed to exist.

When did the term of the commissioner begin? The office began December 31, 1918. The amendment provides that the commissioners shall hold for two, four and six years respectively. It does not say that they shall so hold from and after the date of their respective appointments.

If the office was in existence immediately after the amendment took effect, namely December 31, 1918, and such is the decision in the Bradley Case, then the terms be-

gan when the office began. If it should be held that the terms began when the appointments were actually made, then we would reach a result in conflict with the reasoning and decision in the Bradley Case, because if the first terms began only after actual appointment, then there would have been no office in existence prior to the beginning of such first terms. But the office did exist, under the decision of that case. It follows that the terms began when the office began. The Governor could not delay the beginning of the first terms by delaying an appointment. Otherwise the amendment would not be self-executing. If its operation was not dependent on the legislature, neither was it dependent on the Governor.

Unquestionably the office of the civil service commissioner was created by the civil service amendment. The amendment provides a term for that office. If the office existed, the term did likewise. One began when the other did. The reasoning above followed is practically the same as that found in *State ex rel. Wilson v. Parker,* 30 La. Ann. 1182. After stating a conclusion similar to that above announced, the court there said:

"There is no more reason for saying that the *commencement of the term was suspended* until there was an appointee, than there is for saying that *the existence, the commencement of the office itself,* was suspended. Neither the existence of the office, nor the running of the term, depended upon the appointment of an occupant, so far as we can gather from the terms of the act. We are of opinion that, in the absence of provision to the contrary, the term begins with the existence of the office—and not with the appointment of an incumbent—otherwise infinite confusion would be introduced in the tenure of public offices. As said by this court, in '*Bry v. Woodruff,*' 13 La. 563, 'in offices for terms of years, it is important they should have a fixed date of commencement and termination'—and we think, that where there is nothing in the act creating the office and its term directing otherwise, we should hold in the interest of

public order that the term begins with the going into effect of the act creating the office."

In *Bruce v. Matlock,* 86 Ark. 555, 111 S. W. 990, the court, in the course of its opinion, observed the provisions of an act providing that the Governor shall biennially appoint certain officers.   It was held that· such officers are appointed for a fixed term, and in that connection the court also said:   "The term begins, not necessarily from the date of appointment, but from the time fixed by the lawmakers for it to begin.   It began with the approval of the act of April 5, 1893, creating the new board, and each succeeding term began biennially thereafter on the same day of the year."

This is entirely consistent with *State ex rel. Wilson v. Parker, supra.*

If the terms were dependent on the appointment, the executive, by deferring appointments for a time or indefinitely, could defeat the overlapping term provision entirely. Such could not have been the intention.

The rule herein adopted does not apply in the case of elective officers.   It is obvious. that where an election is necessary a term will not begin until after an election is held.

For the reasons above stated, we hold that the first terms of the civil service commissioners began when the office came into existence, namely December 31, 1918, and Governor Shoup's appointment of January 2, 1923, of Hamrock was properly made, to fill a term beginning December 31, 1922.

The answer of defendant in error contained a second defense based upon a subsequent appointment by Governor Shoup under date of January 8, 1923 "for a full term of six years, said term expiring January 9, 1929," and setting forth that the oath of office of Governor Sweet was filed with the Secretary of State at 1:25 o'clock p. m. January 9, 1923.   A considerable portion of the briefs of counsel is devoted to this second defense and the very interesting questions arising thereunder, all of which become immate-

rial in the light of the conclusion hereinbefore reached. The judgment is affirmed.

MR. CHIEF JUSTICE TELLER specially concurring:

I concur in the judgment announced in the court's opinion for the reason that the appointment of the defendant in error is valid in law. I am unwilling, however, that this concurrence shall be supposed to approve, in the slightest degree, the manner of his appointment.

When the people, by their votes, have designated the persons who are to act as heads of the various departments of the state government for the succeeding administrative term, they have clearly indicated their desire and purpose that those persons shall, during such period, select all appointive officers, and be responsible for the manner in which they discharge their duties.

For an executive, on the eve of his retirement from office, to appoint one to an office wherein the term has just expired, or is about to expire, for the manifest purpose of anticipating the action of his successor, thus giving a position to a political follower, is to express contempt for the sovereign people, thwart their will, and show poor sportsmanship. Such acts,—and they are not confined to one political party,—are defended on the ground that they are political; but I have yet to learn that political exigencies require that public officials ignore ethical standards, and the will of the people, constitutionally expressed.