THE HON. HENRY L. MYERS,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS,
THE HON. ALBERT J. GALEN,
} Associate Justices.

---

STATE EX REL. FOOT, ATTORNEY GENERAL, PLAINTIFF, *v.* ROGGE ET AL., DEFENDANTS.

(No. 6,167.)

(Submitted June 4, 1927. Decided July 1, 1927.)

[257 Pac. 1029.]

*Quo Warranto—Counties—Elections—New County Officers— Terms—Constitution—Irregularities in Pre-election Proceedings—How Viewed by Courts on Attack After Election.*

Elections — Irregularities in Preliminary Election Proceedings — How Viewed if Attacked After Instead of Before Election.
1. After an election has been held and all the electors had notice thereof and proper ballots to vote their will, informalities in pre-liminary election proceedings will not be judged by the same rigorous rule as where they are attacked prior to election.

---

1. See 9 R. C. L. 1172.

(1)

Same—New Counties—Time for Proclamation for Election of Officers.

2. *Semble:* In view of the provision of section 4396, Revised Codes 1921, that all officers of a county out of which a new county is to be created, residing in the proposed new county, shall be deemed officers of the new county if within five days after determination on the petition for the creation of the new one they shall indicate their intention to become officers of the new county, and the board of commissioners shall then omit providing for the election of such officers, it would seem that the proclamation for the election of officers of the new county should be made after five days from determination on the petition.

Same—Constitution—Election of Officers of New Counties—Power of Legislature to Provide for.

3. The Constitution is a limitation upon legislative action, and not a grant of power; hence where legislative power is not limited on a given subject the assembly has inherent power to enact appropriate legislation; and under that rule, *held,* that since the Constitution is silent as to the creation of new counties, the legislature could properly provide in the New Counties Act for the selection of officers of new counties as it deemed most appropriate, within the spirit and intent of the Constitution.

Same—County Commissioners of New Counties—Terms of Office—Intention of Constitutional Amendment to be Made Effectual on Creation of New County.

4. *Held,* that while the people in amending section 4, Article XVI, of the Constitution extending the terms of office of county commissioners to six years and providing that beginning with 1906 one commissioner should be elected at each general election for six years, thus always maintaining a board two of whom should at all times be experienced men, did not declare that the plan so established should apply in the creation of new counties, it was their clear intention that it should apply and be made effectual in new counties at as early a time as possible.

Same — County Commissioners — Terms of Office in Newly Created Counties.

5. *Held,* that though the legislature in the New Counties Act (sec. 4395, Rev. Codes 1921) did not declare that where all the members of the board of county commissioners must be elected at the creation of a new county, none holding over as members of the board of the parent county because of their residence in the proposed new county, they shall be elected for terms of two, four and six years to comport with the intention of the people in amending section 4, Article XVI of the Constitution (see par. 4 above), it did declare that they should hold office until the time provided by general law for the election of such officers, and not until the next general election, and thereby intended that when under the general law a term should not expire with the general election, the commissioner elected should hold over such general election.

Same—New Counties—Election of County Commissioners—Chapter 106, Laws of 1925 not Retroactive.

6. Chapter 106, Laws of 1925, providing that county commissioners elected at a special election for the creation of new counties shall

---

3. See 6 R. C. L. 153.

[80 Mont. 1.]

hold office until the next general election, *held*, in the nature of an amendment to section 4395, Revised Codes 1921 (see par. 5), which, not being retroactive, has no effect upon a special election held in 1924.

Same—County Commissioners in New County—Length of Terms in Case at Bar.

7. The board of county commissioners of an old county out of which a new one was to be created by resolution called for a special election to be held on general election day in November, 1924, and declared that county commissioners should be elected for terms of two, four and six years, pursuant to the intent of amended section 4, Article XVI, of the Constitution. While in 1926 the call for a primary election included only one county commissioner, three were placed on the ballot for terms of two, four and six years and the successful candidates received certificates of election. In quo warranto proceedings *held* that the election of the commissioners at the special election for two, four and six years was valid; that at the election held in 1926 only one commissioner was to be elected, to-wit, a successor to the one previously elected for two years, such successor being elected for a six-year term; that the election of the other two was invalid, and that the board as properly constituted consisted of the two hold-overs and the newly elected commissioner.

---

[1]    Counties, 15 **C. J.**, sec. 98, p. 452, n. 81 New.    Elections, 20 **C. J.**, sec. 80, p. 96, n. 34.

[2]    Counties, 15 **C. J.**, sec. 156, p. 494, n. 48.    Elections, 20 **C. J.**, sec. 87, p. 102, n. 5 New.    Officers, 29 **Cyc.**, p. 1400, n. 40.

[3]    Constitutional Law, 12 **C. J.**, sec. 167, p. 745, n. 1, **2.**    Counties, 15 **C. J.**, sec. 94, p. 449, n. 20; sec. 141, p. 485, n. 71.

[4]    Counties, 15 **C. J.**, sec. 98, p. 451, n. 57.

[5]    Counties, 15 **C. J.**, sec. 154, p. 493, n. 30.

[6]    Counties, 15 **C. J.**, sec. 98, p. 452, n. 81 New.

[7]    Counties, 15 **C. J.**, sec. 98, p. 451, n. 57.

Original proceeding in quo warranto by the State, on the relation of L. A. Foot, Attorney General, against Joe Rogge and others, to determine title to offices as county commissioners of Petroleum county.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene*, for Defendants George A. Burr and J. W. Beck, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

*Mr. Ralph J. Anderson* and *Mr. R. E. Dockery*, for Defendants Joe Rogge and Joe Maxey, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original quo warranto proceeding by the state, on relation of L. A. Foot, attorney general, against Joe Rogge, J. W. Beck, George Burr, and Joe Maxey, to determine which two claimants are entitled to office as county commissioners of Petroleum county.

The attorney general filed herein a complaint by which the following showing is made to this court: In 1924 a petition was filed with the board of county commissioners of Fergus county for the creation of Petroleum county from a portion of Fergus county. The board, having determined that the petition was sufficient, passed the required resolution calling for an election, to be held on November 4, 1924, being the general election day in that year, on the creation of the county and the election of officers therefor, including three county commissioners. Ten days later the board passed a resolution in this connection, declaring that commissioners should be elected for terms of two, four, and six years. The county was duly created and the election resulted in favor of the following men for commissioners of the new county: J. W. Beck for a term of six years, Robert P. Hayes for a term of four years, and George A. Burr for a term of two years. Certificates of election were duly issued to them, and each duly qualified and entered upon the discharge of the duties of the office.

In 1926 the usual call for a primary election was published calling for the nomination of officers, including "one county commissioner." In spite of this call, the Republican party nominated Joe Maxey for a term of six years, Joe Rogge for a term of four years, and Charles D. Bohn for a term of two years, and the Democratic party nominated George A. Burr for a term of six years and Robert P. Hayes for a term of two years. Beck claimed to hold for a period of four years under his original election, and therefore the Democrats

placed no one in nomination for that term. In the, general election following, Maxey, Rogge and Hayes received the highest number of votes cast and were issued certificates of election, and filed bonds and oaths of office. Since the first Monday in January, 1927, Beck, Hayes, Burr, Maxey and Rogge have asserted their right to, and attempted to occupy, the office of the board of county commissioners of Petroleum county, and to conduct the affairs of the county and draw compensation therefor.

The complaint alleges, in effect, that each of the defendants usurps, intrudes into, and unlawfully holds the office of county commissioner, and that their claims and intrusions result in impairment in the dispatch of public business, and prays that this court take jurisdiction of ''the controversy which wages against the peace and dignity of the state'' and determine which of the contenders is entitled to office. On the showing made, an order to show cause was issued and served upon each of the defendants, and, in lieu of a return thereto, Maxey and Rogge joined in a general demurrer to the complaint, and Beck and Burr also filed a general demurrer to the complaint, and on the return day counsel for these joint opposing contenders argued the matter on the merits.

1. Neither side attacked the sufficiency of the complaint or the right of the attorney general to institute the proceeding; nor do we understand that either side contends that the complaint is insufficient for the omission of any necessary allegation concerning the subject matter of the controversy, but our understanding is that each side intended, by filing a general demurrer, to admit the truth and sufficiency of the facts alleged and thus raise an issue of law as to which of the contenders is entitled to each office, and to admit that the demurrer should be sustained as to those entitled to the offices and overruled as to those not so entitled, and that thereupon the court may determine and declare the rights of the several parties defendant.

2. Counsel for Maxey and Rogge contend that, when the [1] Fergus county board passed its first resolution and adjourned, it lost jurisdiction of the matter of the election, and its subsequent resolution fixing terms for the three commissioners to be elected was ineffectual. This contention might have some merit had it been presented prior to election, but, after the people have expressed their choice, the rule as to informalities in election proceedings is not rigorously enforced. "The underlying principle is that, inasmuch as the people have the right to choose officers to serve them, no informality in the election will suffice to defeat their will, as expressed by their votes, if in fact it appears that they had actual notice and did indicate their choice." (*State ex rel. Patterson* v. *Lentz*, 50 Mont. 322, 146 Pac. 932.) Here the election was held jointly with the general election in 1924; the ballots directed the people to choose commissioners for terms of two, four and six years; and it is manifest that all of the electors of the proposed county had notice and opportunity to vote their will.

The question as to whether the board had the right, subse- [2] quent to the original resolution, to designate terms, is now immaterial. However, as section 4396, Revised Codes of 1921, provides that "all duly elected, qualified and acting officers of [the parent county] who may reside within the proposed new county, shall be deemed to be officers of said new county if they file with the board of county commissioners, whose duty it shall be to call the election, within five days after the final hearing and determination of said petition, * * * their intention to become officers of said proposed new county, and the board * * * shall omit providing for the election of any such officers as may have filed their declaration," etc., it would seem that the law contemplates that the proclamation for the election should be made at some time more than five days subsequent to the final hearing and determination on the petition.

3. While "an office without an incumbent is vacant, whether it never had an incumbent or the vacancy has been caused by * * * the happening of any other one of the contingencies enumerated in section 420 of the Revised Codes," now section 511, Revised Codes 1921 (*State ex rel. Patterson* v. *Lentz,* above), and while the election for the creation of the county and the election of officers was a special election, so declared by section 4394, Revised Codes of 1921, the offices of the new county were never "vacant" within the meaning of the above quotation, nor was the election a special election to fill vacancies, and the rules as to such elections do not apply. Here the offices were filled by the very act which created them (i. e., the vote of the people) at the instant they were created—and that under an express provision of law—and, if we can find warrant in the law for the method adopted, the original commissioners were duly elected for terms of two, four and six years.

4. As to the election of county commissioners for a new [3] county, we find an apparent hiatus in the law. The Constitution is silent as to the creation of new counties, and its provisions concerning county commissioners deal only with their election or appointment in counties in existence at the time the Constitution was adopted; among these provisions we find the declaration that "a vacancy in the board of county commissioners shall be filled by appointment by the judge of the judicial district in which the vacancy occurs." (Sec. 4, Art. XVI.) This is a prohibition against the legislature providing for the election of commissioners to fill vacancies when they occur in established counties; but, as the Constitution is a limitation upon legislative action, and not a grant of power (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386; *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392), the prohibition does not extend to those matters not referred to in the Constitution, and, as the Constitution does not mention new counties, the legislature had

inherent power to provide for the selection of officers in such manner as they deemed most appropriate, within the spirit and intent of the Constitution.

The legislature provided that all officers should be elected at the time the people voted on the creation of the county, but did not provide a method by which the commissioners then elected would retire from office at succeeding periods.

Prior to 1902 the Constitution provided that the terms of all county commissioners should be four years, and, under this provision, all of the members of each board would be elected at the same time and would consequently retire from office at the same time (original Article XVI, sec. 4), and, under this provision, it was held that, where the legislature elected or appointed a board for a county created by it, the commissioners would hold for the constitutional terms of four years. (*State ex rel. Williams* v. *Mayhew,* 21 Mont. 93, 52 Pac. 981.)

In 1902, section 4 of Article XVI of the Constitution was [4] amended by extending the terms of the commissioners elected in 1900 to six years, and providing that, in the election to be held in 1906, one commissioner in each county should be elected for a term of six years, one for four years, and one for two years, and that thereafter but one commissioner should be elected at each general election whose term should be six years. With reference to the amended provision, this court has said: "This was all one single scheme, with the single purpose of establishing and maintaining in existence a board of commissioners two of whom at all times would be experienced men." (*State ex rel. Teague* v. *Board of Commissioners,* 34 Mont. 426, 87 Pac. 450.) While this purpose is expressed only as to counties in existence, it was the clear intention of the people, in amending the constitutional provision, that it should apply to all counties in the state, and, in order that there shall be uniformity throughout the state at all times, this scheme of maintaining in existence a

board two members of which shall at all times be experienced men, should be effectuated in new counties as early in their existence as may be.

5. The New Counties Act (sec. 4395, above) provides that the officers elected or appointed in new counties shall hold office "until the time provided by general law for the election and qualification of such officers in this state." Counsel for Beck and Burr assert that the language used is of the utmost significance in determining their clients' rights, as, had the legislature intended that such officers should hold only until the next general election, that body would have so phrased the above sentence. There is logic in the reasoning so far as elected officers are concerned, and we may find therein some basis for the establishment of rotation in office in accordance with the spirit of the Constitution at the inception of new counties; counsel, however, further contend that the whole question as to officers, both elected and appointed, has been "forever set at rest in this state" by the decision in *State ex rel. Livesay* v. *Smith*, 35 Mont. 523, 10 Ann. Cas. 1138, 90 Pac. 750; but in this, so far as appointees are concerned, counsel are in error, as the holding in that case was expressly overruled in *State ex rel. Patterson* v. *Lentz*, above, and it was there held, as it was in *State ex rel. McGowan* v. *Sedgwick*, 46 Mont. 187, 127 Pac. 94, that in every instance where a vacancy occurring is filled by appointment, the appointee holds only until the next general election and until his successor is elected and qualified, and in the later case it is said that the office of county commissioner is no exception to the rule in spite of the fact that the legislature has attempted to make an exception of it.

6. If the rule last stated applies to the officers of a new county, elected at a special election, as contended by counsel for Maxey and Rogge, we would have three inexperienced men conducting the affairs of the new county for the first two years, and they would then be retired and three other

inexperienced men would take their places, while the people would have no more authority under the law to provide for rotation in office at the election of 1926 than they had at the election of 1924.

Neither the framers of the Constitution nor the people in amending section 4 of Article XVI of the Constitution contemplated such a situation as that before us, and we must therefore interpret the constitutional provisions in the light of the thought and purpose the people had in mind at the time of the amendment, considering the previous history of the state with regard to commissioners and the surrounding circumstances attending the amendment, with the method adopted for the establishment and maintenance of rotation in office, to the end that at all times humanly possible there should be left on each board of county commissioners two experienced men. Obviously the condition required by the Constitution cannot be established at the outset, unless two members of the board in the parent county reside within the new county and elect to hold office therein, in which event their terms of office would expire at succeeding general elec-

[5] tions. Where all of the members must be elected at the election creating the county, some method had to be adopted to bring the county within the spirit of the Constitution; the legislature did not expressly declare that, at the election for the creation of a new county, commissioners shall be elected for terms of two, four and six years, but it did declare that the officers elected should hold office "until the time provided by general law for the election and qualification of such officers in this state" (sec. 4395), and not until the next general election, and thereby expressed the intention of the legislature that when, under the general law, a term should not expire with the next general election, the officer elected should hold over such general election.

Without reference to the above provisions, the legislature [6] of 1925 provided that senators and commissioners

elected at special elections for the creation of counties "shall hold office until the next general election" (Chap. 106, Laws 1925), but again failed to provide for rotation in the office. This Act is in the nature of an amendment to section 4395, above, and, as it is not retroactive, it can have no effect upon this controversy, which arose before its passage.

Under the law as it existed in 1924, but one commissioner [7] was to be elected at each general election for a term of six years, and therefore, in compliance with the law, and pursuant to the spirit and intent of the Constitution, the commissioners of Fergus county were justified, if not compelled, to provide, as they did, for the establishment at once within Petroleum county of the scheme announced in the constitutional amendment, and *ex necessitate* of adopting the precedent laid down in the provisionary direction contained in the amendment by which the desired end was as speedily as possible reached in the established counties.

We therefore hold that the election, in 1924, of J. W. Beck for a term of six years, Robert P. Hayes for a term of four years, and George A. Burr for a term of two years, was valid, and that, on qualifying, these three men were entitled to hold the offices for the periods mentioned. There was therefore but one county commissioner to be elected at the general election in 1926, in conformity with the constitutional provision, he to fill the position for which Burr's term would expire the first Monday in January, 1927. Burr properly filed for re-election, but was defeated by Maxey, who was nominated against him. On his qualification Maxey became, and now is, the duly elected, qualified and acting commissioner of Petroleum county for the full term of six years, commencing the first Monday in January, 1927. As Beck still had four years to serve, the fact that Rogge was placed in nomination for a four-year term and received the highest number of votes at the general election is immaterial; Beck remains the duly elected, qualified and acting commissioner

for the four years commencing the first Monday in January, 1927. The third commissioner, Hayes, was not made a defendant, as he was successful in the election for the term he already held under his original election; he need not have submitted himself to a vote of the people, but lost nothing thereby, with the exception of his campaign expenses.

The demurrers of contestants Maxey and Beck are sustained, and those of Burr and Rogge are overruled. On the merits, Beck and Maxey must be held to have been duly elected to the offices claimed by them, and each is entitled to such office, while the claims of Burr and Rogge are without merit, and it is so adjudged.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied July 19, 1927.