[Civil No. 3333. Filed May 2, 1933.]

[21 Pac. (2d) 927.]

VERN PRISER, JOHN H. RAPP, WILLIAM WISDOM, JOHN M. NUGENT, AUGUST WIEDEN, B. J. O'NEILL, THOMAS D. TWAY and KENNETH K. SURBER, Plaintiffs, v. ANA FROHMILLER, State Auditor, Defendant.

Mr. John H. Rapp and Mr. Ray C. Bennett, for Plaintiffs.

Mr. Arthur T. La Prade, Attorney General, and Mr. J. R. McDougall and Mr. K. Berry Peterson, Assistant Attorneys General, for Defendant.

ROSS, C. J. — This is an original proceeding in *mandamus* against Ana Frohmiller, state auditor. The plaintiffs are members of the House of Representatives of the eleventh legislature, having been elected at the general election on November 8, 1932, for terms of two years.

The eighth legislature, on January 4, 1929, during its Sixth Special Session, passed an emergency act (chapter 2) providing that members of the legislature from and after the first Monday of January, 1929, should receive and be paid $15 per day.

At the same general election at which plaintiffs were elected, an initiated measure proposing to amend section 1 of part 2 of article 4 of the Constitu-

tion was approved by the people, and thereafter, on November 28, 1932, proclaimed by the Governor of the state to be law.

This constitutional amendment allows one Representative for each 2,500 votes instead of 1,500 votes, thus reducing the membership of the House of Representatives two-fifths. It cuts the pay of Senators and Representatives from $15 to $8 per day. It limits the attachés of the Senate to fourteen and of the House to two-thirds of the membership, and limits their compensation, except the chief clerk of each body, to $5 per day. It provides that reduction in the pay of the members of the legislature shall take effect from and after its adoption.

The plaintiffs, contending that they are entitled to the $15 per day as provided by the act of January 4, 1929, presented their claims to the state auditor for that amount. Upon her refusal to allow and audit their claims for more than $8 per day, they, on February 10, 1933, applied to this court for a writ directing her to pay them and other members $15 per day, or to show cause. The writ was issued and served and on the return day, February 18th, the Attorney General, on behalf of the auditor, filed a general demurrer to the complaint and a brief in support thereof. On the same day the demurrer was argued and submitted with the privilege to the plaintiffs of filing a brief within five days. The brief was filed on April 7th.

The plaintiffs have not presented their contentions in the form of propositions, and it is somewhat difficult to determine just what their contentions are. They cite section 17, part 2, article 4, of the Constitution, reading: "The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall

the compensation of any public officer be increased or diminished during his term of office," and say that this has been since its original adoption, and is now, in the Constitution. They cite like provisions from the federal and certain state Constitutions, with the hope, possibly, that we may conclude that they and the cases decided thereunder are applicable to their situation. But section 17, *supra,* and like provisions in other Constitutions, are limitations upon the powers of the legislatures, and not upon the people in the exercise of their right to change or amend their Constitutions. It was the people who said in the Constitution that the compensation of public officers should not be increased or diminished during their terms of office. This is, however, no restraint upon the people's action in amending the Constitution, but only a direction to the legislature. The people, by initiation in the manner provided in the Constitution, can abolish plaintiff's offices or the body of which they are members. By amendment to the organic act they can increase or diminish any and all salaries and the *per diem* of constitutional officers, at their pleasure. No one has such a vested right in an office or the emoluments thereof that they cannot be taken from him by the people acting in accordance with the terms they themselves have prescribed in the fundamental law.

If the change of *per diem* of legislators had been by legislative and not by constitutional act of the people, the result would be the same. The measure took effect or became law on November 28, 1932, the day it was proclaimed by the Governor. Subdivision 13, § 1, pt. 1, art. 4, Constitution. The term of plaintiffs' office is two years. Section 21, pt. 2, Id. Regular sessions of the legislature after the first one, "commence on the second Monday of January next after the election of members of the Legislature."

Section 3, pt. 2, Id. Thus it is seen that the reduction of the *per diem* was not *during the term of office,* but before the term commenced.

When the plaintiff members of the legislature asked the suffrage of the people, they knew that their constituents would vote on the proposed amendment to the Constitution reducing their *per diem* at the same time they voted for them and, notwithstanding, sought the office. They were then willing to accept the office on such terms and conditions as their constituents should impose; and on the theory that "a bargain is a bargain," binding alike on both parties, plaintiffs have no just cause of complaint.

The amendment was an economy measure proposed by the people. It had for its object the reduction of the expenses of government. This is evidenced by the "argument" of "a state-wide legislative economy committee" attached to the measure and circulated generally throughout the state before the election by the Secretary of State in the "Publicity Pamphlet," sent to the voters as provided by law. In this argument it is said:

"This Amendment proposes to reduce the number of the members of the House of Representatives from 64, the present number, to 37. It cuts the pay of legislators from $15.00 to $8.00 per day and limits the pay of attachés to $5.00 per day, except for the chief clerks. It will save in round numbers $60,-000.00 of state money now paid to legislators and attachés for salaries alone, saying nothing of other savings. It limits the number of attachés of the Senate to 14 and of the House to two-thirds of the membership. It limits the regular sessions to sixty days and special sessions to twenty days."

The course pursued to secure this economy is constitutional and the law must be observed. Neither the courts nor the legislature can lawfully change or evade it in any respect.

The demurrer is therefore sustained and the action dismissed.

McALISTER, J., concurs.

NOTE.—LOCKWOOD, J., being ill, took no part in this decision.