265 P.2d 447

**STATE ex rel. JONES, Atty. Gen.**

v.

**LOCKHART.**

No. 5857.

Supreme Court of Arizona.

Dec. 26, 1953.

392

Ross F. Jones, Atty. Gen., in pro. per.

A. M. Crawford and Thaddeus G. Baker, Asst. Attys. Gen., for plaintiff.

Ruffo Espinosa, Nogales, for defendant.

Parker & Muecke, and Robt. L. Myers, Phoenix, amici curiae.

UDALL, Justice.

The State of Arizona upon the relation of Ross F. Jones, Attorney General, brings this original action in quo warranto, asking that this court adjudge defendant Lynn Lockhart not entitled to hold or enjoy the office of state senator from Apache County, and that judgment of ouster be entered against him.

The undisputed facts are that on March 30, 1953, there was filed with the secretary of state a regularly adopted Senate concurrent resolution proposing an amendment to the Constitution of Arizona relating to the legislature, and directing that said amendment be submitted to the qualified electors at the *next regular general election or at a special election called for that purpose*. Thereafter, by the provisions of Chapter 123, Laws 1953, the legislature called a special election, to be held September 29, 1953, for the purpose of submitting the above and other proposed constitutional amendments to a vote of the people. The election was held, and when the official returns were canvassed it appeared the amendment in question had carried by a majority of 444 votes. Thereupon His Excellency, Governor Howard Pyle, in obedience to Article IV, Part 1, Section 1, subsection (13) of the Constitution, issued a proclamation declaring said amendment to be law.

The amendment is an amendment of Article IV, Part 2, Section 1, subsection (1) of our Constitution, Laws 1953, p. 360, and provides in part as follows:

"2. The Legislature

"(1) The Senate shall consist of two members from each county elected at large.

"Beginning with the Twenty-second Legislature the House of Representatives shall be composed of not to exceed eighty members, to be apportioned to the counties according to the number of ballots cast in each county at the preceding general election for governor in the manner herein provided. * * *"

(Then follows a complicated apportionment formula, presently based upon each 3520 ballots cast for Governor, which will freeze the House membership at the maximum above prescribed.)

At all times prior to the adoption of the foregoing amendment, the state senate had been composed of nineteen members, the apportionment by enumeration of counties being as follows: two senators each from Cochise, Gila, Maricopa, Pima, and Yavapai counties, and one senator from Apache County and each of the other eight counties of the state.

The governor evidently considered that with adoption of the amendment, in the nine counties having but one senator under the old provisions of the Constitution, there was a newly-created additional office of state senator, and that there was a vacancy in the term thereof. The parties to this case seem to agree, and we think properly so, that Chapter 37, Laws 1923, which appears in Article 11 of Chapter 55, A.C.A.1939, providing for special election to fill vacancies in the legislature, has no application to the instant situation, wherein there has never been an incumbent of the

office. That law obviously provides only for the filling of vacancies caused by death, resignation or removal of a person who is already serving a term in the legislature. However, Article 5, Section 8, of our Constitution provides:

"When any office shall, from any cause, become vacant, and no mode shall be provided by the constitution or by law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment."

Believing that this section did apply to the situation, that a term existed and there was a vacancy in the office, and that he was by law empowered to fill the same, the Governor on October 31, 1953, undertook to appoint defendant Lynn Lockhart, of Springerville, Arizona, as state senator from Apache County for a short term, effective November 2, 1953.

On that day defendant appeared at the office of the Governor and took his oath of office as state senator, and in compliance with the rules of the Senate subscribed to a non-communist oath. On the following day while the Senate was assembled in open session, defendant intruded upon that body and made demand upon the Senate President, Hon. Hubert Merryweather, that he be seated as a duly qualified senator from Apache County. His words were substantially as follows:

"I am a member of this Senate; my name is Lynn Lockhart. I have been appointed by the Governor of this State to serve as the second state senator from Apache County. I hand you my certificate of appointment, my non-communistic oath, and my oath of office. There not appearing to be any desk available for me at this time, I will sit here until a desk is provided for me."

Apparently Mr. Lockhart then seated himself in a vacant chair on the Senate floor. Thereupon a motion to adjourn *sine die* was made and carried, and the senators left the chambers.

Defendant presently claims to hold and exercise the office of state senator, and to assume and perform the duties pertaining thereto, and to be entitled to receive the emoluments thereof.

██ Upon the verified complaint of the Senate president and pursuant to Section 28–301, A.C.A.1939, the attorney general has brought this quo warranto action, asking that judgment of ouster be entered against defendant. Article 6, Section 4 of the Constitution of Arizona, confers upon this court original jurisdiction in quo warranto proceedings as to all state officers. Members of the legislature are undoubtedly state officers. While elected from a single county or a subdivision thereof, this fact cannot alter their official rank, which arises from the fact that the legislature is under our Constitution a co-ordinate branch of the state government. Certainly their du-

ties concern the state at large, for the legislature is an instrumentality appointed by the state to exercise a part of its sovereign powers. See Morril v. Haines, 2 N.H. 246; 42 Am.Jur., Public Officers, § 20; 49 Am.Jur., States, Territories and Dependencies, § 28. Therefore, it is of great public concern that only persons lawfully entitled thereto shall discharge the duties of a member of the state legislature, and from the facts here presented we deem the case to be a proper one for this court to exercise its original jurisdiction.

Some question is raised whether quo warranto is a proper proceeding to decide the problems here involved. We hold that it is. Section 28–301, A.C.A.1939, says:

"An action may be brought by the attorney-general in the name of the state upon his relation, * * * upon the verified complaint of any person, in the Supreme Court, * * * against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within this state, and he shall bring such action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised."

When defendant received a purported appointment by the highest executive officer of this state, and pursuant thereto took an oath of office, entered the Senate chambers, claimed to be a duly qualified and acting senator, and seated himself therein as a regular member of that body, he was more than a mere volunteer or interloper without color of right, and brought himself within the terms of our statute as one who "usurps, intrudes into or who unlawfully holds or exercises any public office." Whether the ancient prerogative writ would lie in these circumstances we need not decide. It suffices that there is a controversy justiciable by this court. We stated in State ex rel. Sullivan v. Moore, 49 Ariz. 51, 65, 64 P.2d 809, 815, "No officer nor tribunal other than the courts may determine whether an election or appointment is void or not." Nor is this exercise of jurisdiction by the courts an encroachment upon the power of the legislature to judge the qualifications of its own members. See State v. O'Brien, 47 Ohio St. 464, 25 N.E. 121.

The constitutional amendment in question embraces both (a) an increase in the size of the Senate, and (b) a limitation on the future membership of the House to freeze it at its present size, accomplished by a changed basis of apportionment. It is contended that the amendment never became part of the Constitution of this state because the manner in which it was submitted to a vote of the people violated Arti-

cle 21, Section 1, of the Constitution of Arizona, which provides in part as follows:

" * * * If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the electors may vote for or against such proposed amendments separately.

We believe the prohibition of Article 21, Section 1 was not violated, and we shall proceed to point out why. In the case of Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 554, 94 A.L.R. 1502, this court laid down the yardstick to be used in determining what matters fall within the ban of the constitutional provision, and said:

"If the different changes contained in the proposed amendment all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted. But, if any one of the propositions, although not directly contradicting the others, does not refer to such matters, or if it is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition."

In applying that gauge to the facts shown therein, the court had no hesitancy in declaring as "log rolling of the worst type" and violative of "both the spirit and the letter of the Constitution", three new proposed amendments to the Constitution to be voted on as a single measure. The amendments would have (a) made the Tax Commission a constitutional body, (b) changed the method of taxing public utilities, and (c) changed the procedure by which copper mines should be taxed. It had been contended that all of said measures fell under the general head of "taxation".

▆▆▆ Deciding just what changes do or do not fall within the purview of the prohibition becomes a matter of applying reason to fact. At the outset it should be stated that courts do not lightly declare laws unconstitutional, and we agree with the Supreme Court of Colorado that:

" * * * every reasonable presumption, both of law and fact, is to be indulged in favor of the validity of an amendment to the Constitution when it is attacked after its ratification by the people. * * *" People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 169; Cf. State v. Gastelum, 75 Ariz. 271, 255 P.2d 203; Duhame v. State Tax Commission, 65 Ariz. 268, 179 P. 2d 252, 171 A.L.R. 684.

Since the organization of the Territory of Arizona in the year 1863, the Legislative Assembly, as our legislative body was known prior to statehood, was composed of two bodies, viz.: the Council and the House of Representatives. With the framing and adoption of the Constitution of Arizona in the year 1912, and at all times since, the provisions for the composition and apportionment of the two houses of the legislature have been consolidated into Article 4, Part 2, Section 1, subsection (1), thereof, as a Senate and House of Representatives. Until the adoption of the amendment now in question the Senate membership, by constitutional mandate, has remained the same, i. e., nineteen members to be elected in the fourteen counties according to the apportionment heretofore set forth. However, the people through the initiative, first in the year 1918 (see Sess. Laws Arizona 1919, Initiative and Referendum Measures, p. 7), and later in the year 1932 (see Sess. Laws Arizona 1933, p. 619) amended said subsection and changed the size and apportionment formula for the House membership, while leaving unchanged the Senate membership, although somewhat different phraseology was used each time to accomplish this last result.

True, only the latest amendment has changed the *number* of senators from any county, but each amendment was an amendment of the whole subsection. Although it did not change the number of senators, it *amended* the previous provisions just as much as if it had changed the number. The question of change in the *number* of senators has nothing to do with the problem, the question is whether a provision as to senators and their apportionment to the counties may logically and lawfully be coupled with a provision as to representatives and their apportionment. Clearly both relate to, and are germane to, one general subject, i. e., the composition of the state legislature, and historically the people of this state have considered that but one subject was involved, to-wit: "The Legislature", albeit that legislature is bicameral. We cannot say that the people of this state in dealing with this subject for the past forty years have erred and acted unreasonably in treating their legislature as a single subject in constitutional amendments. We hold that but one proposed amendment was submitted to a vote of the people, and the legislature did not violate Article 21, Section 1, of the Constitution.

 The action of the governor in appointing defendant necessarily is founded upon the premise that proclamation of the amendment made it law, and that the law operated eo instanti to create the second office of senator from Apache County and to create a short term thereof to which defendant could be appointed. If this premise be false, all else falls with it. The date a measure becomes law and the date it becomes operative may be the same, as in Priser v. Frohmiller, 42 Ariz. 30, 21 P.2d 927, but, the authorities agree, and reason

compels us to accept as true, that the date a provision becomes *law* and the date it becomes *operative* may be different. 16 C.J.S., Constitutional Law, § 39. For example, a provision that today becomes part of the body of law of the state may by its terms declare that beginning one year from the date thereof an officer shall have certain powers conferred upon him. While the law exists as law in the interim, it operates to confer the powers only upon the day specified. Let us examine the amendment here with a view to determining at what time it operates to create the term of office which defendant purports to occupy.

 It is fundamental that "The prime effort in construing Constitutions or statutes is to ascertain the intention of those who framed them * * *." Clark v. Boyce, 20 Ariz. 544, 185 P. 136, 140. In 11 Am.Jur., Constitutional Law, Sec. 61, the rule is phrased:

"The fundamental principle of constitutional construction is to give effect to the intent of the framers of the organic law and of the people adopting it. A constitutional clause must be construed reasonably to carry out the intention of the framers, which gives rise to the corollary that it should not be construed so as to defeat the obvious intent if another construction equally in accordance with the words and sense may be adopted which will enforce and carry out the intent. The intent must be gathered from both the letter and spirit of the document.

"It has been very appropriately stated that the polestar in the construction of Constitutions is the intention of the makers and adopters.

"Wherever the purpose of the framers of a Constitution is clearly expressed, it will be followed by the courts. Even where terms of a constitutional provision are not entirely free from doubt, they must be interpreted as nearly as possible in consonance with the objects and purposes in contemplation at the time of their adoption, because in construing a constitutional provision, its general scope and object should be considered."

Of course no constitutional provision is to be construed piece-meal, and regard must be had to the whole of the provision and its relation to other parts of the Constitution.

 Guided by the foregoing principles, our examination of the amendment has convinced us defendant purports to hold a nonexistent term of office. The amendment begins by declaring "The Senate shall consist of two members from each county *elected at large.*" (Emphasis supplied.) The word "elected" here can refer only to the regular election processes provided for by the Constitution and laws of this state. Certainly nothing in the phraseology of the amendment leads us to be-

lieve it was the intent of the electorate to have the amendment become effective instanter and of itself create a term for the new offices. To uphold the appointment we would be forced to read into the amendment something conspicuously absent from it, namely, the creation of a "short term" to be filled by appointment, for the nine new offices. We reject such a strained interpretation, and hold the legal effect of the amendment was to create, at the time it was proclaimed to be law, the nine additional senate offices therein named, and that it was intended the terms thereof should commence when the offices had been filled by persons elected in the manner other senators are elected.

The second sentence of the amendment declares "Beginning with the Twenty-second Legislature the House of Representatives shall be composed * * *." Here the matter is left in no doubt whatsoever, it is spelled out clearly and completely, and in unmistakable terms tells us the change wrought in the manner of apportioning the House of Representatives is not effective until the 1954 elections are held. Here it is both possible and reasonable to read the provisions as to the House as applicable to the Senate, not merely because the provisions follow one another in the amendment, but because the sense of the amendment as a whole when read by an intelligent voter is that it was not meant to become operative as to either house until the next elections. We reiterate, the amendment treats with but one subject, "The Legislature", and the changes made are changes in that legislature. There is one amendment, and one set of changes, and ordinarily we should expect but one date for the changes to become effective.

We are not impressed with the construction urged by defendant that it was intended during the interim we should have a legislature with an increased Senate membership but with an unchanged House apportionment. To say the new offices are created and the term thereof becomes presently effective (the vacancy thus resulting to be filled by appointment), would in our opinion be in direct conflict with the plain language of the amendment, and the result would be to deprive the people in the nine counties granted an additional senator, of the privilege of exercising their electoral franchise to select the person to fill the office. We believe this was never the intent of the electorate, for they have ever jealously guarded their right to elect their public officials and vested the appointing power in other hands only in exceptional cases. For example, see Chapter 135, Laws 1947 (now Section 19–210 of the 1952 Cumulative Supplement), enlarging the membership of the Supreme Court. A departure from this policy would have to be declared in clearer words than are here found.

Furthermore, we note that the amendment was proposed by a concurrent resolution of the legislature, and therein it was

provided that it should be submitted to a vote of the people at the next regular general election, or at a special election called for that purpose. This meant that possibly there would be no submission to the electorate until November, 1954, which indicates the legislature never intended there be any term other than the regular two-year term provided for by Article 4, Part 2, Section 21, of the Constitution, which reads:

"The members of the first legislature shall hold office until the first Monday in January, 1913. The terms of office of the members of succeeding legislatures shall be two years."

It appears that another court has reached a similar conclusion upon a comparable fact situation. In State ex rel. Sanchez v. Dixon, La.App., 4 So.2d 591, 595, the issue presented was whether the governor could appoint as interim appointments, four additional police jurors, under an act authorizing the creation of these offices upon varying population increases. The court said:

"The general rule is that, where no time is fixed for the beginning of the term of an elective office, it begins at the time the office is filled by an election, and if the office is an appointive one, the term begins when the appointment is made. So, where an election is necessary, the term does not begin until after that election is held. 46 C.J., pages 965, 966; 22 R.C.L. p. 550, Sec. 251; State [ex rel. Foot] v. Rogge, 80 Mont. 1, 257 P. 1029; State [ex rel. Kriebs] v. Halladay, 52 S.D. 497, 219 N.W. 125 et seq.; People [ex rel. Quereau] v. Hamrock, 74 Colo. 411, 222 P. 391."

Cf. Graham v. Lockhart, 53 Ariz. 531, 91 P.2d 265; People ex rel. Bagshaw v. Thompson, 55 Cal.App.2d 147, 130 P.2d 237; State ex rel. Rosenthal v. Smiley, 304 Mo. 549, 263 S.W. 825; and State ex rel. Cotter v. Leipner, 138 Conn. 153, 83 A.2d 169. Following the analysis of the Louisiana court, the failure of the amendment to declare otherwise means the office, though created, was not to be filled until the beginning of the term prescribed by law. The new term not yet having come into existence, there is no vacancy to be filled.

 It is the judgment of the court that the defendant is guilty of usurping or intruding into the State Senate, in that he is claiming without right to be a member thereof as a Senator from Apache County, and he is therefore ordered ousted and excluded from said legislative body.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.