539 P.2d 931

Shirley HOOD, a widow, on behalf of herself and all others similarly situated, Appellant,

v.

STATE of Arizona, a body politic, Department of Property Valuation, an agency of the State Government of Arizona, Arlo Woolery, Director of the Department of Property Valuation, Ken R. Kunes, Maricopa County Assessor, Glenn O. Stapley, Maricopa County Treasurer, Ben B. Slade, Apache County Assessor, LaVere O. Connolly, Apache County Treasurer, Sam R. Clark, Cochise County Assessor, Louise E. Peters, Cochise County Treasurer, R. F. Hillman, Coconino County Assessor, Rose Stacy, Coconino County Treasurer, Miriam Vuksanovich, Gila County Assessor, William V. Cunningham, Gila County Treasurer, Gordon Hoopes, Graham County Assessor, Evelyn Hughes, Graham County Treasurer, Jerald Randall, Greenlee County Assessor, Kittie Potter, Greenlee County Treasurer, Robert Hess, Mohave County Assessor, Grace Marlow, Mohave County Treasurer, Cecil R. Tuley, Navajo County Assessor, Raymond H. Randall, Navajo County Treasurer, A. E. Bade, Pima County Assessor, James Lee Kirk, Pima County Treasurer, C. E. McKee, Pinal County Assessor, Jim L. Turnbull, Pinal County Treasurer, Robert R. Hathaway, Santa Cruz County Assessor, Oscar H. Islas, Santa Cruz County Treasurer, William D. Lyman, Yavapai County Assessor, Paul J. Wedepohl, Yavapai County Treasurer, Otis Shipp, Yuma County Assessor, Billy F. Walker, Yuma County Treasurer, Appellees.

No. I CA–CIV 2583.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 9, 1975.

Rehearing Denied Oct. 10, 1975. Review Denied Nov. 18, 1975.

Terry M. Pierce, P. A., Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Donald P. Roelke, Sp. Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

OGG, Presiding Judge.

The appellant-plaintiff Shirley Hood, a widow, instituted this class action on behalf of herself and all others similarly situated. In this case she challenges the validity of two referendum measures passed in the 1968 general election which affect the tax exemptions granted to Arizona

widows and veterans. At the election three proposed amendments to Article 9, Section 2 of the Arizona Constitution were approved by the voters.

House Concurrent Resolution 1 amended Article 9, Section 2 of the Arizona Constitution, by making the qualifications for the veterans exemption more restrictive by adding the provision excluding property conveyed to evade taxation from an exemption and by organizing Section 2 into three subsections. This was carried on the ballot as Proposition 100 and reads:

"Section 2(A). There shall be exempt from taxation all federal, state, county and municipal property. Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law. Public debts, as evidenced by the bonds of Arizona, its counties, municipalities, or other subdivisions, shall also be exempt from taxation. Stocks of raw or finished materials, unassembled parts, work in process or finished products constituting the inventory of a retailer or wholesaler located within the state and principally engaged in the resale of such materials, parts or products, whether or not for resale to the ultimate consumer shall be exempt from taxation. This section shall be self-executing.

Section 2(B). There shall be further exempt from taxation the property of each widow, and each honorably discharged airman, soldier, sailor, United States marine, member of revenue marine service, nurse corps or of the component of auxiliary of any thereof, resident of this state, not exceeding the amount of two thousand dollars, where the total assessment of such widow and such other person does not exceed five thousand dollars; provided, that no such exemption shall be made for such person other than a widow unless such person shall have served at least sixty days in the military or naval service of the United States during World War I or prior

wars, and shall have been a resident of this state prior to September 1, 1945.

There shall be further exempt from taxation the property of each honorably discharged airman, soldier, sailor, United States marine, member of revenue marine service, nurse corps, or of the component of auxiliary of any thereof, resident of this state, not exceeding the amount of two thousand dollars for the tax year 1969, the amount of one thousand five hundred dollars for the tax year 1970, the amount of one thousand dollars for the tax year 1971, and the amount of five hundred dollars for the tax year 1972, where the total assessment of such person named herein does not exceed five thousand dollars; provided, that no such exemption shall be made for such person unless he shall have served at least sixty days in the military or naval service of the United States during time of war after World War I, and shall have been a resident of the state prior to September 1, 1945; provided, that no such exemption shall be made for such person after the tax year 1972.

There shall be further exempt from taxation as herein provided the property of each honorably discharged airman, soldier, sailor, United States marine, member of revenue marine service, nurse corps or of the component of auxiliary of any thereof, resident of this state, where such person has a service-connected disability as determined by the United States veterans administration, and where the total assessment of such person does not exceed five thousand dollars; provided, that no such exemption shall be made for such person unless he shall have been a resident of the state prior to September 1, 1945, or unless he shall have been a resident of this state for at least four years prior to his original entry into service as an airman, soldier, sailor, United States marine, member of revenue marine service, nurse

corps or of the component of auxiliary of any thereof. The property of such person having a compensable service-connected disability exempt from taxation as herein provided shall be determined as follows: (1) If such person's service-connected disability as determined by the United States veterans administration is sixty per cent or less, the property of such person exempt from taxation shall be determined by such person's percentage of disability multiplied by the assessment of such person not exceeding the amount of two thousand dollars; (2) If such person's service-connected disability as determined by the United States veterans administration is more than sixty per cent, the property of such person exempt from taxation shall not exceed the amount of two thousand dollars.

There shall be further exempt from taxation the property of each honorably discharged airman, soldier, sailor, United States marine, member of revenue marine service, nurse corps or of the component of auxiliary of any thereof; resident of this state, not exceeding the amount of two thousand dollars, where such person has a nonservice-connected total and permanent disability, physical or mental, as so certified by the United States veterans administration, and where the total assessment of such person does not exceed five thousand dollars; provided, that no such exemption shall be made for such person unless he shall have served at least sixty days in the military or naval service of the United States during time of war after World War I, and shall have been a resident of this state prior to September 1, 1945.

No property shall be exempt which has been conveyed to evade taxation. The total exemption from taxation granted to property owned by a person who qualifies for any exemption in accordance with the terms of this section 2(B) shall

not exceed two thousand dollars. This section shall be self-executing.

Section 2(C). All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law. This section shall be self-executing.

House Concurrent Resolution 3 amended Article 9, Section 2 by adding limitations on the widows exemption, by adding the provision excluding property conveyed to evade taxation from any exemption and by organizing Section 2 into three subsections. This was carried on the ballot as Proposition 101 and reads:

Section 2(A). There shall be exempt from taxation all federal, state, county and municipal property. Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law. Public Debts, as evidenced by the bonds of Arizona, its counties, municipalities, or other subdivisions, shall also be exempt from taxation. Stocks of raw or finished materials, unassembled parts, work in process or finished products constituting the inventory of a retailer or wholesaler located within the state and principally engaged in the resale of such materials, parts or products, whether or not for resale to the ultimate consumer shall be exempt from taxation. This section shall be self-executing.

Section 2(B). There shall be further exempt from taxation the property of each honorably discharged soldier, sailor, United States marine, member of revenue marine service, nurse corps, or of the component of auxiliary of any thereof, resident of this state, not exceeding the amount of two thousand dollars, where the total assessment of such person does not exceed five thousand dollars; provided, that no such exemption shall be made for such person unless he shall have served at least sixty days in

the military or naval service of the United States during time of war, and shall have been a resident of this state prior to September 1, 1945.

There shall be further exempt from taxation the property of each widow, resident of this state, not exceeding the amount of two thousand dollars, where the total assessment of such widow does not exceed five thousand dollars; provided, that the income from all sources of such widow, together with the income from all sources of all children of such widow residing with her in such widow's residence in the year immediately preceding the year for which such widow applies for exemption, did not exceed (1) $3,500, if none of the widow's children under the age of twenty-one years resided with her in such widow's residence, or (2) $5,000, if one or more of the widow's children residing with her in such widow's residence was under the age of twenty-one years, or was totally and permanently disabled, physically or mentally, as certified by competent medical authority as provided by law; and provided, further that such widow resided with her last husband in this state at the time of his death if she was not a widow and a resident of this state prior to January 1, 1969.

No property shall be exempt which has been conveyed to evade taxation. The total exemption from taxation granted to property owned by a person who qualifies for any exemption in accordance with the terms of this section 2(B) shall not exceed two thousand dollars. This section shall be self-executing.

Section 2(C). All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions to this section shall be subject to taxation to be ascertained as provided by law. This section shall be self-executing."

A third referendum proposition that enters into the arguments presented by the widow is Senate Concurrent Resolution 2 which also amended Article 9, Section 2 by exempting non-commercial household goods from taxation. This was carried on the ballot as Proposition 102, which reads:

"Section 2. There shall be exempt from taxation all federal, state, county and municipal property. Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law. Public debts, as evidenced by the bonds of Arizona, its counties, municipalities, or other subdivisions, shall also be exempt from taxation. All household goods owned by the user thereof and used solely for non-commercial purposes shall be exempt from taxation, and such person entitled to such exemption shall not be required to take any affirmative action to receive the benefit of such exemption. Stocks of raw or finished materials, unassembled parts, work in process or finished products constituting the inventory of a retailer or wholesaler located within the state and principally engaged in the resale of such materials, parts or products, whether or not for resale to the ultimate consumer shall be exempt from taxation. There shall be further exempt from taxation the property of widows, honorably discharged soldiers, sailors, United States marines, members of revenue marine service, nurse corps, or of the components of auxiliaries of any thereof, residents of this state, not exceeding the amount of two thousand dollars, where the total assessment of such widow and such other persons named herein does not exceed five thousand dollars; provided, that no such exemption shall be made for such persons other than widows unless they shall have served at least sixty days in the military or naval service of the United States during time of war, and shall have been residents of this state prior to September 1, 1945. All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions

of this section shall be subject to taxation, to be ascertained as provided by law. This section shall be self-executing."

The widow in this case was denied her widow's tax exemption as a result of the more stringent requirements mandated by the approval of Proposition 101 in the referendum. She qualified for an exemption in all particulars, except that she earned in excess of $3500 per year and was denied an exemption upon that ground. She appealed the denial of her widow's tax exemption to the trial court and filed a motion for summary judgment. The state answered her complaint and also filed a motion for summary judgment. She now brings this appeal from the trial court's orders denying her motion and granting of the state's motion for summary judgment.

The widow claims that Proposition 100 (veterans) and Proposition 101 (widows) and Proposition 102 (household goods) are all conflicting amendments and that under the provisions of Article 4, Part 1, Section 1(12) of the Arizona Constitution only that amendment receiving the greatest number of votes is valid. Article 4, Part 1, Section 1(12) reads:

"[Conflicting measures or constitutional amendments] If two or more conflicting measures or amendments to the Constitution shall be approved by the people at the same election, the measure or amendment receiving the greatest number of affirmative votes shall prevail in all particulars as to which there is conflict."

All three referendum propositions received a majority of affirmative votes: Proposition 100 (veterans) received 263,372 affirmative and 138,049 negative votes; Proposition 101 (widows) received 274,579 affirmative and 126,819 negative votes; Proposition 102 (household goods tax exemption) received 319,595 affirmative and 80,088 negative votes.

The widow reasons that since all three propositions were conflicting only Proposition 102, which received the most affirmative votes, is valid and the other two propositions are void. She therefore reasons that if the new restrictions on widows tax exemptions as contained in Proposition 101 are invalid, then she and the class she represents are entitled to relief.

She also claims Proposition 100 and Proposition 101 contain fatal multiplicity in violation of Article 21, Section 1 of the Arizona Constitution. She further claims that the state erred in the form and procedures followed in presenting such referendum matters to the voters.

Three questions are presented for review which will now be discussed in the order presented to us in the brief.

1. DOES A CONFLICT EXIST BETWEEN PROPOSITION 100 (VETERANS), PROPOSITION 101 (WIDOWS) AND PROPOSITION 102 (HOUSEHOLD GOODS)?

The only change to the existing Article 9, Section 2 of the Arizona Constitution affected by Proposition 102 was the addition of the following sentence between the third and fourth sentences of Article 9, Section 2:

"All household goods owned by the user thereof and used solely for non-commercial purposes shall be exempt from taxation, and such person entitled to such exemption shall not be required to take any affirmative action to receive the benefit of such exemption."

The clear purpose of this amendment was to exempt household goods not used for commercial purposes from taxation. This amendment made no changes in the widows or veterans exemptions.

The only changes made to Article, Section 2 by Proposition 100 consisted of more stringent requirements for a veterans tax exemption, the addition of a provision excluding any tax exemption for property conveyed to evade taxation and organization of Article 9, Section 2 into three subsections. This amendment did not change the provisions of Article 9, Section 2 dealing with the widows exemption or the household exemption.

The only changes to Article 9, Section 2 by Proposition 101 consisted of more stringent requirements for claiming a widows exemption, the addition of a provision excluding any tax exemption, the addition of a provision excluding any tax exemption for property conveyed to evade taxation and the organization of Article 9, Section 2 into three subsections. This amendment did not change the provisions of Article 9, Section 2 dealing with veterans exemptions or the household goods exemption.

■ The guiding principle of constitutional construction applicable to our fact situation is that where two or more amendments are adopted on the same day they must be construed together and effect given to all. Any differences must be reconciled, if such is possible. Opinion to Governor, 78 R.I. 144, 80 A.2d 165 (1951); Fitzgerald v. Cleveland, 88 Ohio St. 338, 103 N.E. 512 (1913); 1 T. Cooley, Constitutional Limitations 129 (8th Ed. 1927). The controlling Arizona case is *State ex rel. Nelson v. Jordan*, 104 Ariz. 193, 450 P.2d 383, *appeal dismissed*, 396 U. S. 5, 90 S.Ct. 24, 24 L.Ed.2d 4 (1969). This case involved two seemingly conflicting amendments that were given approval by the voters in the same election. One amendment, Proposition 108, purported to eliminate the office of state auditor while reciting the terms of office for executive officers was for two years. The other amendment, Proposition 104, extended the term of office of the executive department to four years, and recited that the executive department shall include the office of the state auditor. The Supreme Court of Arizona gave effect to both amendments by holding the office of state auditor was eliminated and by holding the term of office of the executive department was to be four years. At page 196, 450 P.2d at page 386 of the opinion, the court held:

"This decision is rested on the principle that the dominant canon of constitutional interpretation is to arrive at the purpose of the constitutional enactment; that in arriving at the purpose where, as here,

separate parts of a constitution are seemingly in conflict, it is the duty of the court to harmonize both so that the constitution is a consistent workable whole."

While there is extensive repetition in the three Propositions presented to the voters in this case, we find no serious conflict and believe all can be harmonized to make Article 9, Section 2 of the Arizona Constitution a consistent, workable section that reflects the will of the voters as expressed in the 1968 general election.

2. DO PROPOSITIONS 100 (VETERANS) AND 101 (WIDOWS), VIOLATE ARTICLE 21, SECTION 1 OF THE ARIZONA CONSTITUTION?

■ Article 21, Section 1 of the Arizona Constitution states:

"If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the electors may vote for or against such proposed amendments separately."

This constitutional provision attempts to curtail the practice known as "log-rolling," a practice where several unrelated matters are placed together in one amendment, forcing the voter to approve, even when he disagrees with some provisions, simply to secure the passage of portions he strongly supports. *Kerby v. Luhrs*, 44 Ariz. 208, 36 P.2d 549 (1934).

We believe this question is answered by the case of *State v. Lockhart*, 76 Ariz. 390, 265 P.2d 447 (1953). The court in that case held that a constitutional amendment that embraced both an increase in the size of the Senate, and a limitation on the future membership of the House related to the same general subject of composition of the State Legislature and was therefore a valid single amendment. The court held that as long as there is a reasonable relationship between the several provisions, the amendment will not violate Article 21, Sec-

tion 1 of the Arizona Constitution. See *Opatz v. City of St. Cloud*, 293 Minn. 379, 196 N.W.2d 298 (1972).

In our opinion the tax exemption qualification provisions are reasonably related and they present a coherent scheme of exemption. To force a breakdown and separate vote for each new provision in a proposed amendment would make the process of amending our Constitution so burdensome that it would be almost impossible to make any constitutional changes in complicated areas of our law. There was a reasonable relationship among the provisions in this case and a voter could reasonably be expected to support all or none of the provisions contained within the single proposed amendment.

3. DO PROPOSITION 100 (VETERANS) AND PROPOSITION 101 (WIDOWS) COMPLY WITH THE REQUIREMENTS OF ARTICLE 21, SECTION 1 OF THE CONSTITUTION RELATIVE TO THE PROCEDURE AND FORM OF PRESENTING PROPOSED AMENDMENTS?

The pertinent part of Article 21, Section 1 states that:

"Until a method of publicity is otherwise provided by law, the secretary of state shall have such proposed amendment or amendments published . . ."

Statutory provisions were passed pursuant to this constitutional authority. Section 19–123(A), 1 and 2, ARS, relates to the contents of the publicity pamphlet and states:

"2. The form in which the measure or proposed amendment will appear on the ballot, the official title, the descriptive title prepared by the secretary of state, and the number by which it will be designated."

The pertinent portions of Section 19–125(D), ARS, states:

"There shall be printed on the official ballot immediately below the official title of each measure a descriptive title containing a summary of the principal provisions of the measure . . ."

The widow contends that Proposition 100 (veterans) and Proposition 101 (widows) both failed to comply with the requirements of Article 21, Section 1 of the Arizona Constitution because the text of the amendments proposed by both propositions contained a provision stating that "no property shall be exempt which has been conveyed to evade taxation" and no reference was made to this provision in the descriptive titles of either proposition.

■ We do not believe that it is necessary to set forth the complete text of the proposed amendment on the ballot. ARS § 19–125(D) only requires the descriptive title to contain "a summary of the principal provisions of the measure." The purpose of the descriptive title is to direct the voters' attention to the specific amendment so it will not be confused with other amendments on the ballot. The Referendum Publicity Pamphlet is provided to educate the voter on all the details of each proposition. In this pamphlet the descriptive title of each proposition as it appeared on the ballot appeared with the full text of Article 9, Section 2, of the Arizona Constitution, as amended, and the arguments for and against such amendment. We do not believe this omission in the descriptive title was a material departure from the statutory requirements or a deception to the voters.

■ The widow also contends that Proposition 101 (widows) failed to comply with the provisions of Article 21, Section 1 of the Arizona Constitution because the descriptive title to such proposition stated that the proposed amendment provided "for imposition of punishment by law for a person who makes a false statement in support of a claim for tax exemption," and the amendment had no such provision. This erroneous provision in the descriptive title to Proposition 101 is not such a material variation that will invalidate the referendum vote, considering that it is the purpose of the title to identify the amendment rather than to educate the voter.

When a challenge is made to the form of a ballot or the manner of handling an election prior to the election the courts will apply a strict statutory construction; however, when such a challenge is made after an election the courts will take a liberal view in upholding the results of the election.

In the case of *Kerby v. Griffin*, 48 Ariz. 434, 62 P.2d 1131 (1936), the court stated at page 452, 62 P.2d at page 1138:

"The general rule, and that which we have adopted in Arizona, is that statutory directions as to the time and manner of giving notice of an election are mandatory and will be upheld strictly in a direct action, such as this, instituted *before* an election, but that in an action brought *after* the election has been held, substantial compliance therewith is all that need be shown."

Under the posture of this case we feel that there was substantial compliance with the statutory requirements and that the voters were not deceived.

Affirmed.

DONOFRIO and FROEB, JJ., concur.