737 P.2d 1367

**Gwendolyn K. TILSON and Brig. Gen. Robert McMath, Plaintiffs-Appellants,**

v.

**Rose MOFFORD, Secretary of the State of Arizona; and Citizens for Fair and Sensible Liability Laws, Defendants-Appellees.**

No. CV–86–0456–AP.

Supreme Court of Arizona, En Banc.

June 2, 1987.

Langerman, Begam, Lewis and Marks by: Amy G. Langerman, Robert G. Begam, and Hofmann, Salcito, Stevens & Myers by: Leroy W. Hofmann, Phoenix, for plaintiffs-appellants.

Robert K. Corbin, Atty. Gen. by: Anthony B. Ching, Sol. Gen., Phoenix, for Mofford, defendant-appellee.

Lewis and Roca by: John P. Frank, Gabriel Beckmann, Steven Labensky, Janet A. Napolitano, Phoenix, for defendants-appellees.

**1.** The proposed amendment would be added to article 27 of the Arizona Constitution, which is entitled "Regulation of Public Health, Safety and Welfare." Article 27 provides:

§ 1. Regulation of ambulances; powers of legislature

HOLOHAN, Justice.

The superior court granted summary judgment for defendants in plaintiffs' action to enjoin the Secretary of State from printing an initiative measure on the November 1986 ballot. We affirmed this judgment on September 10, 1986, and indicated that a formal written opinion would follow.

Two issues are presented for review:

1) Whether the proposed initiative violates the single-subject rule of article 21, section 1 of the Arizona Constitution;

2) Whether the proposed initiative violates A.R.S. § 19–123(A)(1).

In July 1986, Citizens for Fair and Sensible Liability Laws (Citizens), a non-profit corporation, filed petitions with the Secretary of State to place the following initiative measure on the ballot for the November 1986 general election: [1]

AN INITIATIVE MEASURE

PROPOSING AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF ARIZONA RELATING TO REGULATION OF PUBLIC HEALTH, SAFETY AND WELFARE; DEFINING AND GUARANTEEING RIGHT TO SEEK MONETARY DAMAGES IN CASES OF INJURY OR DEATH; AUTHORIZING LEGISLATION WITH RESPECT TO AMOUNTS PAYABLE FOR DAMAGES OTHER THAN MONETARY DAMAGES; PAYMENT PLANS TO PROVIDE FOR ALL FUTURE DAMAGES AND CONTINUING CARE; LIMITS ON ATTORNEYS' FEES AND COSTS PAYABLE FROM DAMAGE AWARDS; PRESCRIBING APPLICATION OF AMENDMENT TO OTHER PROVISIONS OF THE CONSTITUTION, AND AMENDING ARTICLE XXVII, CON-

Section 1. The Legislature may provide for the regulation of ambulances and ambulance services in this State in all matters relating to services provided, routes served, response times and charges.

STITUTION OF ARIZONA, BY ADDING SECTION 2.

Be it enacted by the People of the State of Arizona:

The following amendment to Article XXVII, Constitution of Arizona, by adding Section 2, is proposed to become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the Governor:

Section 1. Article XXVII, Constitution of Arizona, is amended by adding Section 2, to read:

### § 2. Damages

SECTION 2. THIS CONSTITUTION GUARANTEES THE RIGHT TO SUE TO RECOVER PAST AND FUTURE MONETARY DAMAGES IN CASES OF INJURY OR DEATH. 'MONETARY DAMAGES' MEANS REASONABLE EXPENSES OF NECESSARY MEDICAL CARE AND RELATED SERVICES, LOST EARNINGS AND A LOSS OR DECREASE IN FUTURE EARNINGS.

THE LEGISLATURE IS AUTHORIZED TO ESTABLISH THE FOLLOWING:

A. AMOUNTS TO BE PAID FOR ALL DAMAGES OTHER THAN MONETARY DAMAGES;

B. PAYMENT PLANS TO PROVIDE FOR FUTURE MONETARY AND OTHER DAMAGES AND FOR CONTINUING CARE OF THE INJURED; AND

C. LIMITS ON AMOUNTS OF ATTORNEYS' FEES AND COSTS WHICH MAY BE PAID OUT OF DAMAGE AWARDS.

IN CASES OF INJURY OR DEATH, THIS SECTION GOVERNS OVER ALL OTHER CONSTITUTIONAL SECTIONS AND STATUTES EXCEPT PROVISIONS WHICH DEAL WITH WORKMEN'S COMPENSATION LAW.

Soon after the filing of the initiative petition, Gwendolyn Tilson and Robert McMath (Tilson) filed an action in superior court seeking to enjoin the Secretary of State from printing the measure on the ballot. The trial court allowed Citizens to intervene in the case as defendants. Citizens moved for summary judgment and the trial court granted the motion, thereby denying Tilson's request for an injunction. Tilson appealed.

I

■ Before we reach the issues raised by Tilson, the issue of our jurisdiction to review the legality of the proposed initiative prior to its approval by the voters has been raised. Under our constitution, the people did not grant to the legislature plenary law-making power. They reserved to themselves the powers of initiative and referendum. Ariz. Const. art. 4, Pt. 1 § 1. The legislative power of the people is as great as that of the legislature. *See* Ariz. Const. art. 22, § 14. Just as under the separation of powers doctrine the courts are powerless to predetermine the constitutionality of the substance of legislation, so also they are powerless to predetermine the validity of the substance of an initiated measure. *See State v. Osborn*, 16 Ariz. 247, 249–51, 143 P. 117, 118–19 (1914); *accord Williams v. Parrack*, 83 Ariz. 227, 319 P.2d 989 (1957). The courts have the power to determine what the law is and what the constitution contains, but not what it should contain. *Osborn*, 16 Ariz. at 251, 143 P. at 118.

■ However, the courts do have the duty of ensuring that the constitutional and statutory provisions protecting the electoral process (*i.e.*, the manner in which an election is held) are not violated. *See Kerby v. Griffin*, 48 Ariz. 434, 444–46, 62 P.2d 1131, 1135–36 (1936). Indeed, we have held that the procedures leading up to an election cannot be questioned after the people have voted, but instead the procedures *must* be challenged before the election is held. *Id.* Before an election, the court's authority to intervene and enjoin the enactment of an initiative is limited to those instances "where an initiative petition is defective in form or does not bear the number of signatures of qualified electors required by Article 4, Part 1, § 1, Constitution of Arizona, or where the prescribed procedure has not been followed...." *Iman v. Bolin*, 98 Ariz. 358, 365, 404 P.2d 705, 709 (1965); *see also Williams v. Par-*

*rack*, 83 Ariz. at 231, 319 P.2d at 991. Thus, procedural violations in the elective process itself must be reviewed by the court prior to the actual election, while the legality of the substance of an initiative cannot be reviewed until the initiative is adopted by the electorate and is later at issue in a specific case.

█ Neither issue before the court requires inquiry into the legality of the substance of the proposed constitutional amendment. Both issues deal with whether the form of the initiative conforms with the constitutional and statutory provisions regulating the initiative process. *See* Ariz. Const. art. 21, § 1; A.R.S. § 19–123(A)(1). Therefore, we have jurisdiction pursuant to A.R.S. § 19–122(C) to hear the limited issues raised by Tilson as to the form of the proposed initiative, but we express no opinion on the legality of the substance of the amendment.

## II

Article 21 of the Arizona Constitution establishes the procedure for amending the state constitution. The last sentence of the section provides:

> If more than one proposed amendment shall be submitted at any election, such proposed amendment shall be submitted in such manner that the electors may vote for or against such proposed amendments separately.

Ariz. Const. art. 21, § 1. Tilson contends that the proposed initiative violates this single-subject rule because it contains four separate and distinct propositions, none of which is required for proper operation of the others.

In the leading case interpreting article 21, section 1, this court recognized that this constitutional provision "was intended to prevent the pernicious practice of 'log-rolling' in the submission of a constitutional amendment." *Kerby v. Luhrs*, 44 Ariz. 208, 214, 36 P.2d 549, 551 (1934). Log-rolling is the attempt to combine several dissimilar propositions into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately.

Although the constitutional mandate in article 21, section 1 is clear, the difficult question, as recognized by this court in *Kerby*, "is to determine what test shall be used to ascertain whether there are in reality several amendments submitted under the guise of one." *Id.* at 216, 36 P.2d at 552. *Kerby* went on to clarify the test that had been initially laid out in *State v. Timme*, 54 Wis. 318, 11 N.W. 785 (1882), and later applied by other jurisdictions:

> If the different changes contained in the proposed amendment all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted. But, if any one of the propositions, although not directly contradicting the others, does not refer to such matters, or if it is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition.

*Kerby*, 44 Ariz. at 221, 36 P.2d at 554.

█ Applying this test, the court in *Kerby* rejected the initiative proposal before it on the basis that no two of the sections were "necessarily required for a proper operation of the third" and on their face they had "no direct relation *to each other.*" *Id.* at 222, 36 P.2d at 554 (emphasis in original). Furthermore, the proposed amendment submitted "three separate propositions upon which each voter might, and many doubtless would, have widely different opinions." *Id.* As the amendment compelled voters to vote for or against all three separate propositions as a unit, the court found that the amendment was "log-rolling of the worst type" and that it violated "both the spirit and the letter of the Constitution." *Id.* Subsequent cases in Arizona have similarly ap-

plied the basic test articulated in *Kerby*. *See State ex rel. Nelson v. Jordan*, 104 Ariz. 90, 449 P.2d 18 (1968); *State v. Lockhart*, 76 Ariz. 390, 265 P.2d 447 (1953); *Hood v. State*, 24 Ariz.App. 457, 539 P.2d 931 (1975).[2]

■ The trial court in the instant case found that the initiative consisted of four propositions, all related to the same topic of tort damages and all logically related to each other. The court concluded that voters reasonably would be expected to favor either all or none of the issues presented in the proposed amendment. Thus, the court found that the initiative did not violate Arizona Constitution article 21, section 1.

We agree with the reasoning of the trial court. All of the propositions in the proposed amendment deal with authorizing the legislature to regulate tort awards. To determine a plaintiff's recovery in a tort case, the court must consider amounts to be paid for non-monetary damages, attorneys' fees, and costs, as well as the payment method utilized for monetary damages. As the purpose of each of the propositions in the proposed amendment is the same, (i.e., to regulate tort awards), voters reasonably can be expected to vote for or against the amendment as a whole. We affirm the trial court's ruling that the proposed initiative does not violate Arizona Constitution article 21, section 1.

### III

Tilson next argues that the initiative violates A.R.S. § 19–123 and is intentionally deceptive and misleading.

### A.   *A.R.S. § 19–123*

Pursuant to A.R.S. § 19–123, the Secretary of State must print a publicity pamphlet on any proposed constitutional amendment. The pamphlet must contain:

A true copy of the title and text of the measure or proposed amendment. Such text shall indicate material deleted, if any, by printing such material with a line drawn through the center of the letters of such material, and shall indicate material added or new material by printing the letters of such material in capital letters.

A.R.S. § 19–123(A)(1). Tilson claims that the initiative violates the statute because it fails to indicate that the proposed amendment would "drastically alter" at least two existing provisions of the Arizona Constitution, article 2, section 31 and article 18, section 6.

■ Tilson's reliance on A.R.S. § 19–123 is misplaced. The statute does not regulate the initiative measure itself, but relates only to the publicity pamphlet. Thus, although it is indisputable that the proposed initiative expressly authorizes the legislature to do what article 2, section 31 and article 18, section 6 of the Arizona Constitution specifically prohibit the legislature from doing, A.R.S. § 19–123 does not require that the initiative itself indicate other constitutional provisions affected by the amendment. As Tilson makes no claims that the Secretary of State has improperly prepared the publicity pamphlet,

---

**2.**   Citizens cites *Iman v. Bolin*, 98 Ariz. 358, 404 P.2d 705 (1965), *Barth v. White*, 40 Ariz. 548, 14 P.2d 743 (1932), and *State v. Osborn*, 16 Ariz. 247, 143 P. 117 (1914), as a "line of authority" that an initiative must be placed on the ballot if it has "some title," "some text" and the requisite number of signatures. Essentially, Citizens is saying that the only requirement the initiative must meet as to form is that it consisted the initiative have a title and some text. *See* Ariz. Const. art. 4, Pt. 1 § 1. Citizens' reliance on these cases is misplaced. The cited cases do not address the issue of the single-subject requirement of proposed constitutional amendments under Ariz. Const. art. 21, § 1. These cases interpreted Ariz. Const. art. 4, Pt. 1 § 1, from which the "some title"/"some text" rule is derived but which expresses no preference for single-subject or mul-

ti-subject initiatives. *See Cottonwood Dev. v. Foothills Area Coalition*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982). *Iman* and *Osborn* concerned an initiative for a *statute;* the constitutional single-subject requirement of article 21, § 1 applies only to initiatives for *constitutional amendments*. *Barth* involved an initiative for a constitutional amendment but it dealt specifically with alleged defects in the title and text of the proposed initiative and did not involve the single-subject issue or interpret article 21, section 1 at all. A close reading of these cases makes it clear that the court articulated the "some title"/"some text" rule to reinforce the fundamental principle that the court will not inquire past the form of a proposed initiative to rule on the legality of its substance.

we affirm the trial court's decision that A.R.S. § 19–123 has not been violated.

### B. *Fundamental Fairness and Due Process*

■ Tilson claims that the proposed initiative is intentionally deceptive and misleading because it is framed so as to hide from voters the fact that its adoption will "repeal" Arizona Constitution article 2, section 31 and article 18, section 6. Thus, Tilson asserts, the initiative fails to satisfy fundamental fairness and due process requirements of the elective process.

The plain language of the proposed amendment is clear and straightforward; any ambiguity would lie not in the language of the amendment itself, but rather in the effect the amendment would have on other constitutional provisions. Arizona has no statute nor constitutional provision requiring an *initiative* to indicate other provisions of the constitution that would be affected by the proposed amendment. As stated earlier, A.R.S. § 19–123 deals solely with the publicity pamphlet. Furthermore, the initiative provisions of the state constitution found in article 4, Part 1 section 1 and article 21, section 1 are simple and self-executing; none of them require the initiative to indicate other constitutional provisions affected or altered.

In the absence of any constitutional or statutory directive to the contrary, the proper place to argue about the potential impact of an initiative is in the political arena, in speeches, newspaper articles, advertisements and other forums. The constitutionality of the interpretation or application of the proposed amendment will be considered by this court only after the amendment is adopted and the issue is presented by litigants whose rights are affected.

The judgment of the superior court is affirmed.

CAMERON, J., concurring.

MOELLER, J., did not participate in the determination of this matter.

FELDMAN, Vice Chief Justice, concurring.

I concur in the court's analysis and conclusion. I write separately only because I believe part III of the court's opinion requires further comment.

In order to accurately describe and properly inform the public of its effect, the initiative measure should have been labeled as follows:

AN INITIATIVE MEASURE PROPOSING TO AMEND ARTICLE 2, SECTION 31 AND ARTICLE 18, SECTION 6 OF THE CONSTITUTION SO AS TO ENABLE THE LEGISLATURE TO SET LIMITS ON THE AMOUNT OF DAMAGES TO BE AWARDED FOR INJURY OR DEATH, AND TO LIMIT ATTORNEY'S FEES IN SUCH CASES.

Instead, the amendment was put before the people under a title indicating that it was an amendment to art. 27 of the Arizona Constitution, a provision that deals with the legislature's power to regulate ambulances. Nothing in the title or body of the initiative proposal clearly stated that its actual effect was to modify the guarantees contained in art. 2, § 31 and art. 18, § 6, which prohibit the legislature from either abrogating the right to recover damages or limiting the amount recovered. This result nevertheless was accomplished by the concluding paragraph of the proposal, which states that the initiative governs over all other sections of the Constitution.

Thus, the title and wording of the initiative proposal did not indicate its effect on art. 2, § 31 and art. 18, § 6; in fact, the initiative title and wording actually may have disguised the proposal's reach. Believing, with the court, that the democratic process requires questions of fairness in drafting to be resolved first by the electorate rather than the judiciary, I concur in the holding that the judicial branch has no power to keep the proposal off the ballot simply because we might believe the matter has not been submitted to the people in a fair form. In my view, however, the question of fairness and clarity may be addressed by the legislature. *See* Ariz. Const. art. 4, pt. 1, § 1 and A.R.S. § 19–102

**474**

*et seq.* The legislature certainly may require that initiative measures amending existing portions of the Constitution be submitted to the people with a caption indicating the constitutional sections to be affected. It may require that the proposal set forth both the original text and the proposed amended text. Such statutory requirements would have the salutary effect of informing the electorate of just what they are being asked to do and what changes are being made. It would have the further beneficial effect of decreasing the selling power of public relations specialists on either side of any proposal. The question should not be how palatable something can be made to appear but how accurately it is put before the people.

GORDON, C.J., joins in Vice Chief Justice Feldman's concurrence.