RANDOLPH, Justice,
Specially concurring:
¶ 19. Hughes and Hemmins (“Opponents”) challenge the substantive, facial validity of Proposed Initiative Measure No. 26 (“measure”) and are “anxious to have this [Cjourt pass upon the case upon [those] merits....” Power v. Ratliff, 112 Miss. 88, 72 So. 864, 865 (1916) (citation omitted). This, despite the fact that there remain underlying issues “so serious” that this Court should not “feel justified in waiving or ignoring” them. Id. Those subjects include the absence of justiciability and our judicial policy against issuing advisory opinions, both of which have been astutely addressed by Justice Pierce. I am in complete accord with his analysis, and write separately only to comment upon the subjects addressed by Justice Pierce and to offer additional reasoning why the dissent’s proposed disposition, reversing the judgment of the circuit court *1267 and rendering judgment in favor of the Opponents, would be clearly erroneous.
STATUS OF THE PROCEEDINGS[13]
¶ 20. In November 2008, P. Leslie Riley and Personhood Mississippi (“Proponents”) submitted the language of what would become the measure to the Mississippi Secretary of State’s office. Thereafter, some 106,825 certified signatures were collected in support of the measure.[14] In February 2010, the petitions were submitted for filing with Mississippi Secretary of State Delbert Hosemann (“Secretary”) who, following review, stated that “[p]ursu-ant to Mississippi Code Section 23-17-23,
... having found none of the grounds for refusal exists, [the measure] is accepted and filed.” After the Attorney General performed his duties related to the ballot title and summary,[15] the measure was filed with the Legislature. The Legislature then had its opportunity to adopt, amend, or reject the measure. See Miss.Code Ann. § 23-17-29 (Rev.2007). But the Legislature chose none of the aforementioned alternatives during the four months it was in session. Thus, the Secretary followed his mandated duty and “plaee[d] the initiative on the ballot for the next statewide general election.” Id.
¶ 21. Only then did the Opponents file a “Complaint for Declaratory and Injunctive Relief’ to “challenge the constitutionality of’ the measure and enjoin the Secretary from placing it on the ballot. They alleged that the measure “seeks to propose a new provision to the Bill of Rights ... and to modify the terms ‘person’ and ‘persons’ as used throughout the Bill of Rights.... ” The Secretary, as well as the Proponents, denied these allegations in their respective Answers. The Opponents alleged standing “[a]s duly qualified electors and taxpayers of the State of Mississippi,]” which was likewise denied by the Secretary and the Proponents. The Opponents prayed for the circuit court to declare the measure “unconstitutional and invalid[;]” to enjoin the Secretary from even “delivering the measure to the Legislature so that it may appear on the November 2011 ballot[;]” and also to enjoin the Secretary “from placing [the measure] on the ballot.”
¶ 22. In the Opponents’ Rule 12(c) “Motion for Judgment on the Pleadings” and subsequent “Combined Reply to Defendant Secretary of State and Defendant Intervenors Responses in Opposition to Plaintiffs’ Motion for Judgment on the Pleadings” (with submitted supplemental exhibits), they averred that they “do not here challenge the sufficiency of ... Measure 26, but instead challenge its facial constitutionality....” (Emphasis added.)
¶ 23. In response, the Proponents averred that the measure “proposes no new right, ... modifies no existing right, and ... repeals no portion of the existing Bill of Rights.” They cited Article 3, Sections 5 and 6 of the Mississippi Constitution to “underscore] the sovereignty of the people[,]”[16] and pleaded that the Op *1268 ponents’ efforts “to force the issue off the ballot” would “den[y] the citizens of this great State the right to vote and express themselves on this weighty issue of public importance.” The Proponents also contested standing and subject-matter jurisdiction, which they asserted are “threshold” inquiries that “must be determined before the court has authority to decide whether plaintiff has stated a claim upon which relief may be granted.” Schmidt v. Catholic Diocese of Biloxi, 18 So.3d 814, 821 (Miss.2009); Luckett v. Miss. Wood Inc., 481 So.2d 288, 290 (Miss.1985).
¶ 24. The Opponents submitted no evidence or proof to the circuit court to support either a declaratory judgment or an injunction prior to the “Order” denying the Opponents’ “Motion for Judgment on the Pleadings.” The circuit court first noted that no sufficiency issues were present, as the measure had “the required number of signatures certified by the various clerk offices, was timely submitted to the [Secretary] and has received an official ballot title and summary as required by Miss. Code Ann. Section 23-17-9.” The circuit court further found that the Opponents “carry a heavy burden in attempting to restrict the citizenry’s right to amend the Constitution[,]” as “the Constitution recognizes the right of citizens to amend their Constitution.” The circuit court concluded that the Opponents “have not met their burden[,]” and denied the relief sought. Fourteen days later, the circuit court entered a “Final Judgment” (agreed as to form only), finding “that order disposes of the case.” (Emphasis added.)
ANALYSIS

(1) Ripeness

¶ 25. “It is not the policy of this state to have elections and other political matters of government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government.” Gibbs v. McIntosh, 78 Miss. 648, 29 So. 465, 465-66 (1901). Rather, “the inclination of judicial thought in this state is that elections of all sorts are not to be interfered with by the courts.” Id. at 466 (citing Ex parte Wimberly, 57 Miss. 437 (1879); Ferguson v. Board, 71 Miss. 524, 14 So. 81 (1893)). See also Power v. Robertson, 130 Miss. 188, 230-31, 93 So. 769, 774 (1922) (citing Ratliff, 72 So. at 864) (“declining] to take jurisdiction of [its] controversy, on the ground that equity had no jurisdiction to enjoin elections or enforce political rights.... ”).
¶26. As recognized by Justice Pierce, the Ratliff Court addressed proposed initiative measure-type cases, stating that when:
qualified electors ... are ... attempting the performance of a legislative act, ... courts have no more right to interfere with this legislative act of the people than they have to prevent an abortive attempt of the Legislature to pass a law. The making of ... laws belongs to a coordinate branch of the government, and ... comts have nothing to do with the making, but must deal altogether with the finished product. The complainants in the present proceedings are seeking an advance opinion as to the validity of a constitutional amendment before that *1269 amendment has been enforced in a way to affect the substantial property rights of anyone. There is no law authorizing a bill of complaint to remove an alleged cloud on or uncertainty about a statute or constitutional amendment before the same has been put into force and effect in a way to injure the parties complaining.
Ratliff, 72 So. at 867 (emphasis added). The Ratliff Court determined that to rule otherwise “would tend too much to government by injunction. It is time enough to elicit an expression of the court as to the validity of a law or constitutional amendment when the substantial rights of litigants have been invaded.” Id. (emphasis added). As such, only:
[w]hen laws have been passed no doubt in a proper case the inquiry can then be made as to whether or not the requirements of the fundamental law ... in their provisions have been observed, but in the first instance the body to which has been delegated the power to pass laws must be left untrammeled, to act in such matters as its wisdom may dictate.
Id. (quoting O’Reilly v. Mills, Sec’y of State, 30 Colo. 262, 265, 70 P. 322, 323 (1902)) (emphasis added). Thus, the Ratliff Court concluded that the “safer policy” was for it to “refrain from interfering with the free exercise of the legislative functions of government whether attempted to be exercised by the Legislature or by the people in their sovereign capacity.” Id. at 869 (emphasis added).
¶ 27. At present, the measure is mere legislation in process, a not-yet-finished product put forth for debate and consideration by the people, but which has not derived any “vital force” via “the action of the people at the ballot-box.... ” Green v. Weller, 3 George 650, 32 Miss. 650, at *21 (Miss.Err. & App.1856). As the measure is now only a “political matte[r] of government[,]” i.e., a political question, it ought not “be interfered with by the judges and officers of the judicial department of the government.” Gibbs, 29 So. at 465-66. See also Int’l Longshoremen’s & Warehousemen’s Union, Local 37 v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954) (“Determination of the scope and constitutionality of legislation in advance of its immediate effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.”). To do so plainly conflicts with separation-of-powers principles. See Miss. Const. art. 1, §§ 1, 2; Tilson v. Mofford, 153 Ariz. 468, 737 P.2d 1367, 1369 (1987) (“Cjjust as under the separation of powers doctrine the courts are powerless to predetermine the constitutionality of the substance of legislation, so also they are powerless to predetermine the validity of the substance of an initiated measure.”); Ratliff, 72 So. at 867 (quoting O’Reilly, 70 P. at 322) (“[t]he judicial department can no more interfere with ... the successive steps necessary to be taken to amend the Constitution than it can with the [Legislature] in the passage of other laws, because the judicial cannot directly interfere with the functions of the legislative department.”). In exercising the same judicial restraint exhibited by the Ratliff Court, we have validated the sovereign right of the people to vote on this measure, affirming the principle that government is “of,” “by,” and “for” the people, not their elected officials. See Abraham Lincoln, The Gettysburg Address (Nov. 19, 1863). Today’s decision respects the rights of 106,325 citizens who signed these petitions and an incalculable number of citizens who otherwise support a vote, pro or con, on the measure. See Green, 32 Miss. 650, at *21 (a proposition is “to be submitted to the action of the people[,]” and necessarily “derives all its vital force *1270 from the action of the people at the ballot-box....”).
¶28. In sum, the present challenge to the substantive, facial validity of the measure is not ripe for consideration. There is time enough in the future to consider whether the measure, if passed, is substantively, facially invalid, vel non. But since the voters of Mississippi may choose to reject this measure, we have properly refused “to anticipate conditions which may never arise.”[17] Ratliff, 72 So. at 868.

(2) Advisory opinion

¶29. Without presenting any facts or evidence, the Opponents seek an impermissible “advance opinion as to the validity of’ the measure before the measure “has been enforced in a way to affect the substantial property rights of anyone.” Ratliff, 72 So. at 867. Today, we follow our long standing policy that we do not “settle questions in the abstract or ... issue advisory opinions.” Tallahatchie Gen. Hosp. v. Howe, 49 So.3d 86, 93 (Miss.2010) (quoting Scoggins v. Baptist Mem’l Hosp.-Desoto, 967 So.2d 646, 649 n. 1 (Miss.2007)). (Maj. Op. at ¶ 7).
¶ 30. According to learned jurist Felix Frankfurter, “[o]ur national experience makes it clear that it is extremely dangerous to encourage extension of the device of advisory opinions to constitutional controversies, in view of the nature of the crucial constitutional questions and the conditions for their wise adjudication.” Felix Frankfurter, A Note on Advisory Opinions, 37 Harv. L.Rev. 1002, 1002 (1924). Fundamentally, the reluctance to issue advisory opinions is rooted in separation-of-powers principles. The constitutionally-imposed duty of the courts is to “decid[e] litigated eases....” Id. at 1007 (citation omitted). But courts are not called upon to “sit in judgment upon the wisdom or fairness or utility of legislation. The Supreme Court is not a House of Lords with revisory power over legislation.... Such deference is not merely a gesture of courtesy. It is the formulation of a basic truth in the distribution of governmental powers.” Id. at 1003. Furthermore, in the absence of facts presented, the “tendency to deal with [such issues] abstractedly, to formulate them in terms of sterile legal questions, is bound to result in sterile conclusions unrelated to actualities.”[18] Id. at 1003. The danger in “ill-considered advisory opinions” detached from real, factual contexts is that their well-intentioned propositions may well become “millstones around the necks of succeeding generations[,]” and create the risk that:
[o]ne step taken by the legislature or judiciary in enlarging the powers of government opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.
Id. at 1008 n. 18; Bell v. City of West Point, 51 Miss. 262, 1875 WL 4692, at *15 (Miss.1875) (Peyton, C.J., dissenting) (citation omitted). Today, this Court wisely avoids these dangers by rejecting the plea to issue a premature and unnecessary advisory opinion.

(3) Failure to State a Cause of Action

¶ 31. Robertson held that the initiative- and-referendum amendment at issue in *1271 that 1922 decision permitted challenges to both “the sufficiency and validity of the petition.”[19] Robertson, 93 So. at 772 (emphasis added). As such, the Robertson Court held that “any qualified elector has a right to question the sufficiency and validity of the petition.” Id. at 773 (emphasis added). By contrast, we find no present constitutional authority exists for pre-election appeals regarding the validity of petitions. (Maj. Op. at ¶ 15).
¶ 32. Additionally, in their pleadings, the Opponents have not claimed or offered any proof or evidence to suggest that submission of this measure to the people will result in an invasion of substantive rights resulting in injury. Because there is no “amendment [that] has been enforced in a way to affect the ... rights of anyone[,]” nothing “has been put into force and effect in a way to injure the parties complaining.” Ratliff, 72 So. at 867. As such, where is the “irreparable injury [that] will be done ... by submission of this question to a vote of the people[?]” Id. at 866. No civil rights will be trampled upon and no property will be damaged. Therefore, “[i]t cannot possibly hurt any one for the people to register their choice or will” on this measure. Id. Any adverse effect is only “fanciful or theoretical” at this point. Id. See also Conner v. Gray, 88 Miss. 489, 41 So. 186, 189 (1906) (“They cannot maintain [a] bill simply because they fear some invasion may be made upon their rights as officers”).
¶ 33. Given the absence of any claim of injury or loss of a civil right in the Opponents’ pleadings, where is the justiciable issue? “The proper remedy will be appropriate action to prevent the execution of any proposition voted for [,] ” if an adverse effect can be shown, and the law is unconstitutional. Ratliff, 72 So. at 866 (citing Thompson v. Mahoney, 136 Ill.App. 403 (1907)) (emphasis added). At that point, “if any person’s rights are affected thereby the courts are open for him to test the legality of the” constitutional amendment. Ratliff, 72 So. at 868.

(4) “Motion for Judgment on the Pleadings”

¶ 34. The circuit court was presented only with a “Motion for Judgment on the Pleadings” by the Opponents. The circuit court’s “Order” denying the Opponents’ “Motion for Judgment on the Pleadings” was nonappealable. Nonetheless, the circuit court’s subsequent “Final Judgment,” from which this appeal proceeds, was entirely predicated upon the “Order” denying the Opponents’ “Motion for Judgment on the Pleadings.” Specifically, the “Final Judgment” provided that the “Order” acted to “dispos[e] of the case.” But that “Order” was not case-dispositive, such that this matter is not even properly before this Court.[20] (Maj. Op. at ¶ 15).
¶ 35. Notwithstanding, with this Court having been provided the pleadings and arguments of the parties only on the “Motion for Judgment on the Pleadings,” the dissent is ready to address a significant constitutional issue, regarding the substantive merits of the measure, and concludes that the measure “runs afoul of the minimum constitutional requirements of Article *1272 15, Section 273(5)(a).... ” (Diss. Op. at ¶ 37). Any such conclusion is premature at this stage of the proceedings.
CONCLUSION
¶ 36. I am “not unmindful of the fact that ... on constitutional questions ... ‘an interpretation once deliberately put upon the provisions of such an instrument should not be departed from without grave reasons.’” State ex rel. Collins v. Jones, 106 Miss. 522, 64 So. 241, 253 (1914). However:
we must remember that the nature of our government is such that the Constitution is necessarily committed into the keeping of this [C]ourt; and, when this [C]ourt has erroneously interpreted that instrument, and no harm can follow the correction of such erroneous interpretation, its plain duty is to do so, and thereby enable the express will of the people to be carried into effect. Especially is this tme when the erroneous interpretation has restricted the people in the exercise of a right which they have expressly reserved to themselves.
Id. (emphasis added). Under the Mississippi Constitution:
There is nothing in the nature of the submission which should cause the free exercise of it to be obstructed, or that could render it dangerous to the stability of the government; because the measure derives all its vital force from the action of the people at the ballot-box, and there can never be danger in submitting, in an established form, to a free people, the proposition, whether they will change their fundamental law. The means provided for the exercise of then* sovereign right of changing their Constitution, should receive such a construction as not to trammel the exercise of this right. Difficulties and embarrassments in its exercise are in derogation of the right of free government, which is inherent in the people.
Id. at 248 (quoting Green, 32 Miss. 650, at *21). Finally, as the Robertson Court stated:
It is always a matter of regret that a court feels called upon to change a decision once reached; but official integrity requires a court, when it is fully convinced that its decision is wrong and will result injuriously, to overrule it and decide correctly the proposition put up to it. I am not a believer in overruling decisions, when they are not clearly wrong and hurtful. A Constitution, however, is much more important and sacred than a decision of any court. The people by the Constitution establish a policy for the good of the people themselves. Where a court misconstrues the Constitution or misjudges a case, and its attention is called to it in the proper way, it should make a correction at the earliest date possible.
Robertson, 93 So. at 777 (citation omitted). These well-reasoned principles dictate my departure from the dissent’s reliance upon Measure 20.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ„ JOIN THIS OPINION.

. I add the following to supplement Justice Pierce’s introduction and highlight the procedural posture of this case when it arrived at our doorstep.

. The Proponents contend that approximately 130,000 "signatures from qualified electors” were collected. In either case, the figure far exceeded the requirement of 89,285 certified signatures, at least 17,857 of which were from each of Mississippi's former five congressional districts. See Miss. Const, art. 15,§ 273(3). I also note that In re Proposed Initiative Measure No. 20, 774 So.2d 397 (Miss.2000), involved a suit filed before any signatures were obtained by the sponsor.

. See Miss.Code Ann. § 23-17-9 (Rev.2007).

. Article 3, Sections 5 and 6 of the Mississippi Constitution provide, in pertinent part, that:
Sec. 5. All political power is vested in, and derived from, the people; all government of *1268 right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.
Sec. 6. The people of this state have the inherent, sole, and exclusive right to regulate the internal government and police thereof, and to alter and abolish their constitution and form of government whenever they deem it necessary to their safety and happiness....
Miss. Const, art. 3, §§ 5, 6 (1890).

. If the measure is not passed, there will be no issue requiring judicial determination.

. For instance, "[cjoncepts like 'liberty' and 'due process’ are too vague in themselves to solve issues. They derive meaning only if referred to adequate human facts. Facts and facts again are decisive.” Frankfurter, A Note on Advisory Opinions, 37 Harv. L.Rev. at 1004-05.

. Notably, the former initiative-and-referendum amendment also provided that ”[i]n the event of legal proceedings in any court to prevent giving effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition." Robertson, 93 So. at 772 (quoting Chapter 159, Laws of 1916) (emphasis added).

. Typically, when a plaintiff’s "Motion for Judgment on the Pleadings” is denied, the parties will meet and prepare a scheduling order and otherwise prepare for a trial.